1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

JEFFREY CHEN, individually,

            Plaintiff,

          v.

CITY OF MEDINA, a public agency and
Washington noncharter code city; DONNA
HANSON, in her official and individual
capacities; BRET JORDAN, in his official and
individual capacities; JOHN DOES 1-3 and
JANE DOES 1-3, in their official and
individual capacities,

          Defendants.

Case No.

COMPLAINT FOR DAMAGES AND
INJUNCTION RELIEF

COMES NOW the Plaintiff, JEFFREY CHEN, by and through his attorneys, and states:

## I.     NATURE OF ACTION, JURISDICTION, AND VENUE

1.     This is a civil rights lawsuit seeking damages and injunctive relief for racial discrimination and the wrongful termination of the employment of former Chief of Police Jeffrey Chen by the City of Medina.

1 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

2.     Although Chief Chen has a right to due process before he can be disciplined or fired from his job, the City of Medina terminated Chief Chen with only a cursory acknowledgement of due process procedures. This was done deliberately, in order to avoid due process protections.

3.     The City Manager, Donna Hanson, collaborated with the investigators and acted as accuser, judge, and jury branding Chief Chen as untruthful and dishonest with the intention of disciplining and terminating Chief Chen in a manner designed to damage any future career in law enforcement and to prevent other employment possibilities.

4.     No standards governed the City Manager's decision-making process or ultimate decision. Ms. Hanson's decision against Chief Chen was based on her personal, subjective belief about whether Chief Chen was truthful, and that subjective belief grew out of Ms. Hanson's prejudice towards Chief Chen's race and national origin, as well as a retaliatory attitude Ms. Hanson had as a result of Chief Chen's reporting of deceptive budgeting committed by Ms. Hanson.

5.     During the four months Chief Chen was on administrative leave and following Chief Chen's termination, members of the City Council took personal measures to actively assist in the decision to malign and terminate Chief Chen causing irreparable damage to his reputation and thwarted specific future employment opportunities. The City adopted Ms. Hanson's decision and failed to question Ms. Hanson's process.

6.     Because Ms. Hanson's accusations, contrived investigation, and decisions failed to meet constitutional standards, the sanction of terminating Chief Chen's employment is unfair and based on unlawful reasons.

2 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

7.      A substantial basis for Chief Chen's termination was Ms. Hanson's and the City's prejudice resulting in unlawfully discriminatory actions that are prohibited by the Fourteenth Amendment to the Constitution of the United States.

8.      Another substantial basis for Chief Chen's termination was Chief Chen's reporting of Ms. Hanson's improper governmental actions to the City Council, speech that is protected by the First Amendment to the Constitution of the United States and Washington laws.

9.      Chief Chen has therefore brought this action under 42 U.S.C. § 1983 for violation of his rights under the First and Fourteenth Amendment to the Constitution of the United States, Title VII of the Civil Rights Act, and Washington laws. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343, 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 42 U.S.C. §2000e-5(f)(3). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

10.     Venue is properly located in the Western District of Washington, Seattle Division, pursuant to 28 U.S.C. § 1391, because the Plaintiff and Defendants reside and/or are located within this District and the actions complained of occurred within this District, in King County.

## II.      PARTIES

11.     Plaintiff Jeffrey Chen is an individual, who at all material times, is and was a resident of the Western District of Washington. Prior to his termination, he was a long-time employee of the City of Medina and served as its Chief of Police.

12.     Defendant the City of Medina is a council-manager governed city existing

3 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    under the laws of the state of Washington, Chapter 35A.13 RCW, and located in the Western

2    District of Washington.

3         13.      Defendant Donna Hanson resides in the Western District of Washington. At

4    all material times relevant to the allegations against her in this Complaint, Ms. Hanson was

5    and is the City Manager for the City of Medina. Ms. Hanson is sued here for injunctive relief

6    in her official capacity, and for damages as an individual.

7         14.      Defendant Bret Jordan resides in the Western District of Washington. At all

8    material times relevant to the allegations against him in this Complaint, Mr. Jordan was a

9    resident of the City of Medina. Mr. Jordan also began serving as a City Council member in

10   2008 and was named as the City's Mayor in 2010. Mr. Jordan is sued here for injunctive

11   relief in his official capacity, and for damages as an individual.

12        15.      Defendants John Does 1-3 and Jane Does 1-3, whose identities are not known

13   with certainty to Plaintiff at the present time, were involved in or participated in the acts and

14   omissions that led to the unlawful discrimination, unlawful termination, and other claims

15   described below.  Their identity should be fully known after disclosure of public records by

16   the City of Medina which are being sought by Chief Chen and which are the subject to a

17   Public Records Action in state court, King County.

### III.     FACTS ENTITLING PLAINTIFF TO RELIEF

i.      **Chief Chen's law enforcement background and career with the City of Medina.**

16.      Chief Chen is a 50-year old Chinese-American male.

17.      Chief Chen was hired as a patrol officer by the City of Seattle in May 1988

and resigned at the rank of Detective Sergeant in April 2001.  During his 13 year career with

4 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  the Seattle Police Department, Chief Chen held a key leadership position at the training

2  division and frequently taught a variety of courses including diversity, cultural sensitivity

3  and bias based policing classes to law enforcement executives, officers and civilian

4  personnel.

5        18.    Chief Chen was employed by the City of Medina Police Department from

6  June 1, 2001 to April 27, 2011. Chief Chen was hired at the rank of Captain, then designated

7  interim Chief of Police for January 2004 and, then, promoted to the ultimate rank of Chief of

8  Police on February 1, 2004. He maintained that rank and position until his termination.

9        19.    On December 17, 2010, during a meeting with City Manager Donna Hanson,

10  Chief Chen was forced to submit his resignation, which he made effective December 31,

11  2010. On December 23, 2010, prior to the effective date, Chief Chen revoked his resignation.

12  The City of Medina placed Chief Chen on administrative leave on December 27, 2010, and

13  then terminated his employment on April 27, 2011.

14        20.    As an employee of the City of Medina, Chief Chen experienced racial

15  discrimination and national origin discrimination, as well as retaliation for constitutionally

16  protected First Amendment speech and actions, including whistle-blowing on improper use

17  of government funds and resources that put the community at risk. The discrimination and

18  retaliation culminated in Chief Chen's termination on April 27, 2011.

19        21.    At the time he was placed on leave, during his leave, and at the time of his

20  termination, Chief Chen was capable of performing all of the essential functions of the job.

21  At the time Chief Chen was placed on administrative leave, he was performing all of the

22  essential functions of the job. Chief Chen's race and national origin were not "bona fide

5 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1    occupational qualifications" for his job.

2    22.    As the Medina Chief of Police, Chief Chen performed a variety of complex

3    administrative, supervisory and professional work in planning, coordinating and directing the

4    activities of the ten-plus member of the Medina Police Department whose jurisdiction

5    includes the Town of Hunts Point by contract.

6    23.    As Chief of Police, Chief Chen has overall authority and management

7    responsibility of the Medina Police Department. The Chief is responsible for establishing and

8    monitoring plans, goals, standards, and operating procedures for the department. The Chief is

9    also responsible for assuming the financial well-being of the department by performing cost

10   control activities, monitoring all fiscal operations of the Department, and preparing the

11   annual budget. The ultimate responsibility for the fiscal management of the Police

12   Department rests with the Chief of Police. The Chief of Police is the liaison between the City

13   Council and the Department, and communicates City programs and policies to department

14   staff.

15   24.    Chief Chen also had responsibility for formulating strategic plans,

16   investigating personnel complaints, handling grievances, providing training, preparing and

17   submitting periodic reports to the City Manager and City Council, and for maintaining a

18   network of professional relationships. Chief Chen also engaged in the full scope of law

19   enforcement and investigation activities that any officer of this small police force would

20   perform.

21   25.    Throughout his employment, Chief Chen was qualified to perform his job,

22   performed it well, and received positive performance reviews. Chief Chen is popular in the

23

24   6 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

communities of Medina and Hunts Point, trusted, and credited with enhancing the police department's professionalism. During Chief Chen's employment he developed the police department making many improvements such as obtaining a mobile communication unit, obtaining FBI training, and obtaining accreditation certification. Prior to his termination on April 27, 2011, Chief Chen had no significant prior disciplinary actions or history of performance problems with the City.

      **ii.**     **The City structure.**

26.    The City of Medina operates under a Council-Manager form of government organized under Chapter 35A.13 RCW. Under this form of governance, the city is governed by an elected City Council that is responsible for policy making, and a professional City Manager, appointed by the Council, who is responsible for administration.

27.    The City Manager provides policy advice to the Council, directs the daily operations of city government, handles personnel functions, and is responsible for preparation of the City budget. The City Manager is directly accountable to the Council. The City Manager is the direct supervisor of the Chief of Police.

28.    The City Council has the authority to create and adopt law and policy, and to employ and provide oversight of a City Manager. The council's authority is limited. The City Council selects a Mayor from among its members. The Mayor generally presides at Council meetings and is recognized as the head of the City for ceremonial purposes, but has no regular administrative duties. The City Council acts as a body, and no member holds extraordinary powers above those of other members or the Council as a whole.

29.    The City of Medina employs 25 full-time equivalent staff members of which

7 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

ten and a half full-time equivalent staffers are members of the police department.

### iii. The City of Medina is home to a hostile work environment and Chief Chen was targeted.

30.     The administrative leadership at the City of Medina supports a cultural bias that is anti-Asian. This culture derives from a segment of the broader city population that makes it clear that if one is not white then one is different and not accepted. This different treatment has created an atmosphere for Asian-Americans and Asians that is full of tension and a permissive atmosphere for others to intentionally or ignorantly discriminate against Asian-Americans and Asians. Asian-based discrimination takes many forms including perceptions of Asian-Americans and culture that lead to narrow and limiting assignments, language and accent discrimination, perceptions of foreignness, perceptions of social deficiency, perceptions of lack of leadership, perceptions of insufficiency, perceptions of inferiority, and perceptions of lack of ability.

31.     From 2001 until 2005, Chief Chen was the only racial minority employed by the City. In 2005, Chief Chen hired a Hispanic male as a police officer who was employed until 2009. From October 2009 until his termination on April 27, 2011, Chief Chen was again the only racial minority staff employed by the City.

32.     Historically, the City of Medina has afforded its Chiefs of Police written employment contracts with benefits, privileges, terms and conditions of employment. Two Chiefs of Police prior to Chief Chen's tenure were white males. Both were given multiple-year employment contracts including benefits, privileges, terms, and conditions. Despite repeated requests, Chief Chen was denied a written employment contract.

33.     Even without a written employment contract, City policies, practices, and

8 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1   representations establish that Chief Chen had a reasonable expectation that his employment

2   would continue and that he would not be terminated except for cause.

3       34.     According to a City "Memorandum of Current Benefits," dated January 29,

4   2008, "terms of employment [for Department Heads or Directors] have not always been

5   clearly communicated…and have even suffered from inconsistencies."

6       35.     The City represented to Chief Chen and to the public that Chief Chen was to

7   be afforded certain process because he is a public employee.

8       36.     For many years, certain politically powerful members of the Medina

9   community, including past and current council members, mayors, city employees, and

10  citizens have used their influence to carry out racial discrimination against Asian-American

11  and Asian members of the community and employed intentional and malicious tactics to

12  deprive them of their constitutionally and statutorily protected rights. Defendants are among

13  this group of citizens and Chief Chen has been harmed and continues to suffer greatly as a

14  result of their discrimination and malice.

15      37.     Throughout his entire career with the City of Medina, Chief Chen faced a

16  hostile work environment paired with personal attacks including racially derogatory

17  comments that were coming at him from all sides: City Council Members including two

18  Mayors, his Chief of Police while he was Captain, police officers in his chain of command,

19  the current City Manager, and several dogged community members.

20      38.     In June 2001, Jeff Chen was hired as a Captain of the Medina Police

21  Department by Chief Michael Knapp.

22      39.     While Chief, Mr. Knapp made several racist comments about Captain Chen

23

24  9 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1   stating that Captain Chen was, "a regular Charlie Chan," and "you can never trust a smiling

2   Chinaman."

3          40.     Chief Knapp also encouraged and participated in a racially hostile

4   environment.

5          41.     A few weeks after Mr. Chen was hired as Captain by the City of Medina, he

6   was made aware of a traffic stop made by Corporal Cary Coblantz. During a nighttime

7   patrol, Corporal Coblantz stopped two black males in a car. As seen on a video that Chief

8   Chen reviewed, Corporal Coblantz drew and leveled his gun at the black male occupants

9   ordering them out and then back in to the car at gunpoint. This action violated proper police

10  procedures and Captain Chen notified Chief Knapp.

11         42.     Captain Chen sought permission from Chief Knapp to provide coaching and

12  counseling to an argumentative Cary Coblantz. Within six months, Cary Coblantz quit to join

13  the King County Sheriff's office. Both Chief Knapp and then Medina Officer Dan Yourkoski

14  were friends with Corporal Coblantz and blamed Captain Chen for his departure from the

15  department.

16         43.     Corporal Coblantz also bragged about drawing his gun on a prominent local

17  sports figure of Asian ethnicity.

18         44.     On one occasion, Officer Yourkoski was discussing a department applicant

19  with another officer. The applicant was a black male. Chief Knapp made a comment along

20  the lines of, "Did you see the size of his hands? I bet those hands would be great cotton

21  picking hands."

22         45.     Mr. Knapp's contract expired and was not renewed at the close of 2003.

23

24  10 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

46.     City Manager Doug Schulze promoted Captain Chen to Interim Chief of Police on January 1, 2004 and then to permanent Chief of Police on February 1, 2004.

47.     Chief Chen's promotion did not curb the on-going discrimination as it had infiltrated into the department through persons such as Officer Yourkoski.

48.     Vocal members of the community continued to attempt to influence the City Manager and Council Members resulting in continuing discrimination and harassment.

49.     In the fall of 2005, while Chief Chen was on an extended leave for training with the FBI, Lieutenant Roger Skinner made the following offensive and racist comments to two other City employees, "One thing I've noticed is that even though there are a lot of Asian people in Seattle, there aren't a lot of Asians as supervisors at Seattle. I think Asians don't make good managers because people don't like them."

50.     In February 2006, upon Chief Chen's recommendation to then City Manager Doug Schulze, Roger Skinner's employment was terminated. Even when persons who exhibited clear racial discrimination and bias toward Chief Chen were terminated or their employment contracts not renewed, the culture of bias continued.

51.     Throughout 2007 and 2008 Chief Chen endured and suffered personal attacks against him by people in positions of authority or supporters who were past, current, or future members of the City Council, former and current City employees, and citizens. These individuals include Henry Paulman, Miles Adam, Drew Blazey, Pete Vall-Spinosa, Eric Hokanson, Lucius Biglow, and Roger Skinner (referred to herein as "the original conspiracy group"). More specific details about each individual and their roles follow. Several have been explicit and overt in their race based attacks, while others use less obvious but still

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

invidious tactics, and still others hide behind pseudonyms or anonymity.

52.    Henry Paulman is a former City of Medina resident who maintains a connection and is influential with the City governance, administration and the original conspiracy group.

53.    Miles Adam served on the City Council from August 2003 through December 2007. Mr. Adam served as the Medina City Mayor from January 2006 through December 2007. He also conspired with Mr. Hokanson and others from the original conspiracy group to continue harassment of Chief Chen. Collectively these individuals in positions of power participated in a concerted effort to perpetuate and cause an environment of continued race-based discrimination of Chief Chen and other Asians in the community.

54.    Pete Vall-Spinosa, was a City of Medina council member from 1978 to 1990, sitting as Mayor from 1988-1990, and a Councilmember again from 2004-2008. He along with Miles Adam were instrumental in supporting the bias toward Asian business and property owners within the City and supported those who discriminated against the Asian community and Chief Chen.

55.    Lucius Biglow served as a City of Medina Councilmember from January 2006 through December 2009. Mr. Biglow had a controversial turn as a councilmember that included a censure from the council relating to sexual harassment and racially charged comments.

56.    Upon information and belief, Mr. Biglow made anti-Asian comments during executive session while on the council. Upon information and belief, Mr. Biglow is the author of a written piece distributed to Medina citizens containing inflammatory racist

12 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    comments about Asians.

2        57.    Several community members teamed up with the original conspiracy group

3    and acted against Chief Chen, including Eric Hokanson.

4        58.    As early as 2006 or 2007, members of the original conspiracy group began,

5    continued, and expanded a conspiracy to oust Chief Chen from his position as Chief of

6    Police and to thwart his ability to obtain public employment or employment in the public

7    security sector by decimating his reputation because he is Chinese-American.

8        59.    Beginning in or around May 2006, Eric Hokanson, an employee of a visible

9    Medina gas station, began a long-term and on-going campaign against Chief Chen that

10   included multiple complaints and extensive public records requests aimed at Chief Chen.

11   Upon information and belief, Mr. Hokanson's on-going campaign has been the result of

12   manipulation and exploitation by others in the community with racist attitudes towards Chief

13   Chen. Upon information and belief those others include, at a minimum, known acquaintances

14   of Mr. Hokanson: Mr. Paulman, Mr. Skinner, Mr. Biglow, Mr. Adam, and Mr. Vall-Spinosa.

15       60.    Over the course of more than four years, Mr. Hokanson made more than 750

16   (seven-hundred and fifty) public records requests to the City of Medina. The vast majority of

17   Mr. Hokanson's public records requests were thinly veiled personal attacks against Chief

18   Chen. In 2007, Mr. Hokanson filed approximately a dozen Police Personnel Complaints that

19   were baseless and without merit.

20       61.    On or about January 29, 2007, Mr. Paulman refused to speak with Chief Chen

21   when Chief Chen returned a call Mr. Paulman had made to Sgt. Kane, a Caucasian officer

22   who was out of the office. Mr. Paulman stated to Chief Chen that he does not talk "to

23

24

13 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Orientals," and that Chief Chen would not be working for the City much longer.

62.     Mr. Paulman followed up his threat by filing a series of complaints against Chief Chen with multiple agencies with the intent of humiliating and embarrassing Chief Chen and in furtherance of his plan to have Chief Chen fired.

63.     In or about March 2007, upon information and belief, Mr. Paulman and Mr. Hokanson, along with another person, lodged a complaint with the state auditor's office against Chief Chen with the intent and purpose of publically embarrassing him and furthering their plan to have him fired. In or about July 2007, Mr. Paulman submitted a complaint to the City about Chief Chen. In or about September 2007, Mr. Paulman submitted another complaint to the City and requested that Chief Chen be sanctioned. Mr. Paulman also disseminated complaints about Chief Chen to community members.

64.     In March 2008, a draft report from the state auditor's office regarding the complaint against Chief Chen filed, upon information and belief by Mr. Paulman, in March 2007 was anonymously and intentionally leaked to the media and public despite the State Auditor and the then-City Manager, Mark Weinberg, directing that the draft not be released because drafts are often altered and could, therefore, be misleading to the public.

65.     Prior to the February 2008 audit leak, the only individuals believed to have access to the draft document were three council members, Drew Blazey, Jim Lawrence, and Shawn Whitney; City Manager Mark Weinberg and City finance officer Jan Burdue; two members of the police department, Chief Chen and Lt. Dan Yourkoski; and the state auditors. Upon information and belief, the person or persons leaking the draft was or were someone from that finite group

14 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

66.     During the time around his voluntary departure in March 2008, outgoing City Manager Mark Weinberg sent a scathing e-mail to incoming interim city manager Michael Caldwell and to the media citing reasons for his resignation. Mr. Weinberg stated to a local newspaper on March 14, 2008 he believes Chief Chen was being targeted. Weinberg wrote, "At the root of this…is the fact that a couple of current and a couple of former council members have created an unholy alliance with Henry Paulman and Eric Hokanson in an attempt to run Police Chief Jeff Chen out of town. I have good reason to believe that their motives are personal and even laced with bigotry."

67.     Upon information and belief, members of the original conspiracy group also requested that the Washington Attorney General's Office investigate Chief Chen, and contacted the Kirkland Police Chief to request that a corruption investigation be launched against Chief Chen.

**iv.     The City Manager, Donna Hanson, treated Chief Chen differently and with hostility.**

68.     On November 3, 2008, Donna Hanson began her employment as the new City Manager. It quickly became apparent that Ms. Hanson holds ignorant and bigoted views towards Asian-Americans and Asians and that one of her goals as City Manager was to remove Chief Chen.

69.     Ms. Hanson associates with and has been influenced by people in the original conspiracy group. She communicates with members of the original conspiracy group with frequency and has been influenced by them and the hostile environment that pervades the City of Medina administration.

70.     Ms. Hanson was outwardly dismissive of Chief Chen and these actions

15 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1    alienated him from the City leadership staff.

2           71.    During weekly staff meetings, Ms. Hanson sincerely engaged with other

3    directors by listening, focusing, and making eye contact. Ms. Hanson withheld from Chief

4    Chen the same courtesies and respect that she afforded others and seemed to refuse to make

5    eye contact.   Others within the City of Medina, employees and City Council members

6    noticed the disparity in treatment towards Chief Chen in particular and others in the City of

7    Medina.

8           72.    Ms. Hanson also repeatedly failed to respond to Chief Chen's regular

9    communications with her as his supervisor via electronic mail and telephone, and in many

10   similar regards failed to acknowledge him as a person, much less the City's Chief of Police.

11   Others within the City of Medina, employees and City Council members noticed the

12   disparity in treatment towards Chief Chen in particular and in comparison to Caucasian and

13   other non-Asian American persons in the City of Medina.

14          73.    In December 2008, Chief Chen submitted a performance self-review summary

15   to the City Manager, his supervisor, as he had done for past City Managers. The self-review

16   was 17 pages. On January 15, 2009, Ms. Hanson and Chief Chen reviewed Ms. Hanson's

17   one-page draft performance appraisal. The short draft performance appraisal contained

18   mostly generalized statements. At that time Ms. Hanson had only been employed by the city

19   for a little over two months. Chief Chen followed up the meeting with a written response

20   seeking specific clarification of the general statements in order to understand and integrate

21   the feedback and comments. Ms. Hanson suggested she would respond and that the two of

22   them would meet again. After not hearing anything further from Ms. Hanson, in mid-March,

23

24   16 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

Chief Chen followed up with Ms. Hanson about setting a meeting. Ms. Hanson never responded.

74.     At the same January 15, 2009 meeting Ms. Hanson informed Chief Chen for the first time of a complaint made against him relating to a December 2008 snow storm. The alleged complaint was made by homeowners who were affiliated in the past with the original conspiracy group in their efforts to prevent the Asian grocery store owner from operating the business across the street from their home. Chief Chen never received written notice of the complaint and was not afforded any further process or procedure relating to the complaint. On January 20, 2009, Chief Chen contacted Ms. Hanson to request such procedure and expressed a concern that Ms. Hanson had given Chief Chen the impression the complaint was made a part of the brief draft performance appraisal. Chief Chen again followed up with Ms. Hanson in mid-March 2009. Ms. Hanson never responded to Chief Chen about this incident, his request for handling the complaint with process, or his January 20, 2009, communication to her.

75.     Approximately two months after becoming City Manager, Ms. Hanson went on vacation. Ms. Hanson appointed planning director Robert Grumbach, a white male who had only six months of employment with the City at the time, as the acting City Manager. Ms. Hanson disregarded previous City of Medina practice of appointing Chief Chen to that position during the City Manager's absence.

76.     Ms. Hanson actively thwarted Chief Chen's ability to perform his job by making herself unavailable and impossible to communicate with regarding items Chief Chen championed, that Ms. Hanson disagreed on, and/or that required Ms. Hanson's action or

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1   approval.

2   77.   Chief Chen had obtained a 2008 Emergency Management Performance Grant

3   from the Department of Homeland Security that was designed to fund and better prepare the

4   City to respond to all hazards and enhance preparedness activities and emergency

5   management. The grant was set to expire without having been fully exhausted and required

6   Ms. Hanson's approval to avoid that result. In and about February and March 2009, Chief

7   Chen repeatedly attempted to obtain approval to implement the planned security project

8   funded by the grant from Ms. Hanson but found it difficult to discuss with her. Shortly before

9   the grant expired in March 2009, Chief Chen caught up with Ms. Hanson in her office and

10   again sought her decision on the matter because he was concerned the City was about to lose

11   the grant.

12   78.   Ms. Hanson became indignant and sharp, and said to Chief Chen, "Stop

13   badgering me on this issue, I can't decide right at this moment, besides, I thought you

14   Chinese people were suppose to be more patient than this!"

15   79.   The grant opportunity expired and Ms. Hanson never provided a reason for

16   her abruptness on the issue or an apology to Chief Chen for associating his persistence to

17   utilize a grant for the benefit of the City with a racially charged statement aimed as a

18   personal attack. In e-mail exchanges, Ms. Hanson's reasons for stalling the grant fulfillment

19   included the planned remodel of city hall, but Chief Chen had notified Ms. Hanson that the

20   procurement request covered by the grant, was an item required for accreditation which

21   negated Ms. Hanson's basis.

22   80.   During Chief Chen's active employment and prior to the events of December

23

24
18 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

2010, Ms. Hanson further undermined Chief Chen's position, role, and credibility by repeatedly approaching colleagues and others outside the City to double-check on Chief Chen and actions he took or decisions he made without communicating with him personally or directly.

81.    Also during Chief Chen's active employment and prior to the events of December 2010, Ms. Hanson commented to a colleague outside the City words to the effect of, "If Jeff Chen ever tries to apply for any future police chief job in the public sector, he will never get my support and will never work in law enforcement again. He may be able to get a job in the private sector, but he'll never work again in the public sector."

82.    Prior to Thanksgiving Day in 2009 at the conclusion of a department director staff meeting with all present, Ms. Hanson asked Chief Chen, "Do you people celebrate Thanksgiving?" and "Do you people eat turkey?"

83.    For many months throughout 2010, Ms. Hanson and Nancy Adams, the City Finance Director, repeatedly badgered Chief Chen, to the point that he felt harangued, about budgeted items that were necessary to sustain the public safety program, within the department's mission, and within Chief Chen's authority.

84.    At the same time, Chief Chen identified valuable budget cuts and savings, e.g. overtime and marine patrol contracts, and was actively making changes to implement those savings. Instead of acknowledging the value to the City of these savings, Ms. Hanson repeatedly questioned Chief Chen about necessary expenditures. In the case of the marine patrol contract, she outright opposed him after having given explicit authorization for him to pursue an alternate less costly and more effective contract.

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

85.     Ms. Hanson harbors prejudiced and racist views against Chief Chen and these views have been a motivating factor behind her acts and omissions, in both her personal and official capacities, that are pleaded herein.

86.     Ms. Hanson's treatment of Chief Chen continued a legacy of racial discrimination at the City of Medina. Ms. Hanson's behavior and her clear intent to remove Chief Chen as Police Chief gave others at the City and around Chief Chen implicit permission to engage in racial hostility and animus towards Chief Chen.

87.     In or about February 2008, Lt. Dan Yourkoski, in vicious hostile parody, reiterated to Chief Chen several times, former-Chief Michael Knapp's comments to Chief Chen, "do you remember when Knapp used to say, you can't trust a smiling Chinaman? And, Chen's a regular Charlie Chan?" Lt. Yourkoski's continued reiteration of these racist comments and the extensive humor he found in them made Chief Chen uncomfortable and added to the tense and hostile work environment at the City. Chief Chen verbally reprimanded Lt. Yourkoski advising him to stop making those offensive anti-Asian comments "ever again."

88.     In or about January 2010, during a police department staff meeting brain-storming a list of goals for the year, Lt. Yourkoski, while standing at a white board behind Chief Chen's back, added to the list in written words "NEW CHIE" [sic] on the white board. All department personnel and officers were present. This act elicited laughter from police officers and mocked Chief Chen. Chief Chen gave Lt. Yourkoski a written reprimand for this insubordinate conduct and placed the memo into his personnel file.

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

### v. **Mayor Bret Jordan**.

89.     Defendant Bret Jordan, the City's Mayor beginning in January 2010, has engaged in an invidious and surreptitious attack against Chief Chen sending mixed and confusing signals by acting as a friend and confidant on occasion and making veiled race-based threats at other times. Before becoming Mayor, Mr. Jordan derogatorily commented to Chief Chen, "I thought Asians had small ones, how did you have four kids?" referencing the size of Chief Chen's genitals.

90.     In or about July 2010, Mayor Jordan and Chief Chen had a conversation in which they spoke about Mayor Jordan treating Chief Chen fairly in front of the public and Ms. Hanson. Mayor Jordan stated that sometimes he would have to give the public appearance the two were not friends. Despite this difficult conversation, Chief Chen made a gift of a knife to Mayor Jordan. Mayor Jordan's response was, "I know how to use one of these. I'm a skinner not a gutter." Chief Chen understood in the context of the conversation that the comment was racially-targeted.

91.     The following month, in September 2010, while at the Spot Tavern with three other city council members following a city council meeting, Mayor Jordan lamented that years ago he applied but was not hired by the Seattle Police Department and he gave up on a police career. He said, "I realized they only hired cunts and runts." When asked what he meant by "runts," he replied "minorities."

92.     Later that same month, at a meeting, Mayor Jordan informed Chief Chen that certain influential members of his own family are racist and that one in particular only speaks to Chief Chen because he is the police chief but otherwise wouldn't speak with Asians.

21 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

93.     Mayor Jordan harbors prejudiced and racist views against Chief Chen and these views have been a motivating factor behind his acts and omissions, in both his personal and official capacities, that are pleaded herein.

**vi.     Despite knowledge, the City took no remedial action.**

94.     During their tenures as City Manager, Doug Schulze, Roger Crum, Mark Weinberg, Michael Caldwell and Donna Hanson, had actual knowledge and were aware of the discriminatory behavior aimed at Chief Chen and/or Asian-Americans and Asians, and of the City's hostile work environment.

95.     During their tenures as City Manager, Doug Schulze, Roger Crum, Mark Weinberg, Michael Caldwell and Donna Hanson, should have had knowledge and been aware of the discriminatory behavior aimed at Chief Chen and/or Asian-Americans and Asians, and of the City's hostile work environment.

96.     City Manager Doug Schulze had actual knowledge of Chief Knapp's racist comments to then-Captain Chen. The City failed to take remedial or disciplinary action as a result of Chief Knapp's blatant racism.

97.     In or about February 2010, Chief Chen met with Ms. Hanson to discuss improving continuity of government processes. During the meeting Chief Chen attempted to address the hostile work environment with Ms. Hanson; her response was to minimize and ignore his concerns saying she "doesn't believe in conspiracies." Since Ms. Hanson has been City Manager, the City has failed to take any remedial or disciplinary action to address the disparate treatment and hostile work environment inflicted against Chief Chen.

98.     During the entire time Chief Chen was employed by the City of Medina, upon

22 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1    information and belief, no trainings have been offered to or required to be attended by City

2    employees that address racial discrimination and/or cultural oppression or sensitivity. The

3    only exceptions include gender-based or sexual harassment trainings and Chief Chen's own

4    coaching and counseling of officers to correct perceived racial profiling.

5          99.    The City failed to take any remedial or disciplinary action to address any of

6    the racial discrimination that occurred while Chief Chen was employed by the City. The City

7    also failed to take any remedial or disciplinary action to address the hostile work

8    environment while Chief Chen was employed by the City.

9          **vii.**    **MX Logic.**

10         100.    In or about 2008 and thereafter, the City's internal email and internet system

11   repeatedly crashed. These repeated crashes threatened continuity of government operations

12   and threatened the City's responsibilities for maintaining public records. In addition, police

13   officer safety was affected by these crashes because, for example, when police dispatch

14   would email a picture of a potential suspect to an officer the officer could not access it if and

15   when the system was down.

16         101.    As one solution, the City contracted with a third-party, off-site vendor, MX

17   Logic, to act as a repository for City emails. This repository provides a redundancy system

18   and external access to emails.

19         102.    As part of his responsibilities as Chief of Police, Chief Chen had authorization

20   to access MX Logic for multiple reasons, including but not limited to conducting or aiding

21   investigations, intelligence gathering, efficient administration, record maintenance and

22   responding to public records requests, and as directed from time to time by the City

23

24   23 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1    Manager.

2         103.    Chief Chen was neither given notice of nor made aware of any policies or

3    rules limiting the Chief of Police's access to MX Logic. There are no City policies or rules

4    limiting the Chief of Police's access to MX Logic.

5         104.    According to the City, there are no "conditions of use, or ... law to which use

6    [of MX Logic] is subjected per City Policy."

7         105.    City Council members are provided policies which specifically inform them

8    to expect their emails through the City to be public and specifically not private.

9         106.    Accessing and effectively using the MX Logic system for authorized purposes

10   requires conducting searches via limited search parameters and painstakingly parsing through

11   search results by opening each returned result.

12        107.    In or about 2007, and up to the time of his termination, Chief Chen became

13   aware of multiple situations pointing to improper and unauthorized flow of information out

14   of the City government. This flow of information threatened both public safety as well as the

15   police department's administrative responsibilities and was an on-going problem through the

16   time Chief Chen was placed on administrative leave.

17        108.    Chief Chen repeatedly notified the various City Managers he worked for of

18   these threats and identified improper and unauthorized access to e-mail and the city's

19   computer system as the likely conduit through which access to the City's information was

20   occurring. Chief Chen raised the concern and threat of improper and unauthorized access to

21   electronic data and information with the sitting City Manager, at least, in or about September

22   2008, January 2009, February 2010, and October 2010.

23

24   24 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**viii.    Chief Chen blows the whistle on Donna Hanson and is retaliated against.**

109.    In or about late August or early September 2010, and prior to September 7, 2010, Chief Chen accessed MX Logic to obtain records relevant to on-going 2011 budget preparations and to conduct a regular review of officer communications as part of his oversight responsibilities. Chief Chen came across an email whose subject referenced "budget stuff" or a similar reference including "budget," that was relevant to the parameters of his purpose for accessing MX Logic.

110.    Due to the nature of MX Logic's function, it is not possible to eliminate a search result that appears to be a relevant email, such as including "budget" in the subject line, without opening and viewing the email.

111.    During one of his investigative audits of the MX Logic system, Chief Chen came across an email that indicated that Ms. Hanson was directing another City director to include that director's salary increase in the draft budget. Ms. Hanson's instruction contradicted the Council's salary freeze policy for the 2011 budget which Chief Chen was previously aware.

112.    On or about September 7, 2010, upon her invitation, Chief Chen met to discuss the public safety budget as part of the City's overall budget with Councilmember Janie Lee, who sat on the City's Finance Committee. Chief Chen reported the content of Ms. Hanson's email to Ms. Lee. Mayor Bret Jordan and Councilmember Shawn Whitney were also notified.

113.    Upon information and belief, during the next week, Ms. Lee and Ms. Whitney, both of whom comprised the City's Finance Committee, confronted Ms. Hanson

25 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1    about her intent to include salary raises for exempt employees contrary to the Council's

2    stated position.

3        114.    On or about September 13, 2010, the City Council formally adopted a policy

4    to freeze all exempt employee salaries for the 2011 budget and directed the City Manager to

5    not increase any salaries in the budget. Regardless, the City Manager included some salary

6    increases in her budget for select department directors in a manner strategically designed to

7    avoid the Council's policy and to specifically hide the increases from the Council.

8        115.    On or about October 11, 2010, Ms. Whitney publically confronted Ms.

9    Hanson during the City Council Meeting about including hidden salary increases for select

10   exempt employees in the 2011 budget, and Ms. Hanson admitted to having also included

11   salary increases for select exempt employees in the 2010 budget despite knowing of the

12   similar policy the year prior.

13       116.    The following morning on or about October 12, 2010, Ms. Hanson angrily

14   lashed out at Chief Chen during the standing City director's staff meeting declaring in an

15   highly audible voice, "I don't appreciate being called a liar!" referring to Ms. Whitney's

16   confrontation the night before.

17       117.    Upon information and belief, over the next week, members of the City

18   Council considered and informally discussed firing Ms. Hanson.

19       118.    On or about October 25, 2010, Don Eagon, a contract IT employee, informed

20   two Medina police officers that the City's IT staff person, Craig Fischer, was reading the

21   Mayor and City Manager's emails on MX Logic to determine if he was going to lose his job

22   with the City. The officers passed on this report to Chief Chen who verbally reported the

23

24

26 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    information to Ms. Hanson on or about October 26, 2010.

2         119.    Ms. Hanson angrily directed Chief Chen not to investigate the issue any

3    further and told him the matter would be handled, dismissing his report and role as police

4    chief.

5         120.    Chief Chen's verbal report was followed up with three written reports by

6    Chief Chen and each of the two officers, on or about October 28, 2010.

7         121.    On or about October 26, 2010, only two weeks after Ms. Hanson was

8    publically confronted by the City Council about hidden salary raises, upon information and

9    belief, Ms. Hanson contacted the Washington Cities Insurance Association (WCIA) and

10   requested a pre-termination investigation targeting Chief Chen in retaliation for his report to

11   the City Council of Ms. Hanson's hiding salary raises and change to the City's marine patrol

12   contract provider.

13        **ix.    Termination of Chief Chen.**

14        122.    According to the City, as a result of Ms. Hanson's call to the WCIA, Michael

15   Bolasina was hired to investigate use of the MX Logic system.

16        123.    At the time, Chief Chen was not made aware of Ms. Hanson's contact with

17   the WCIA or any actions taken to follow up on his report of unauthorized access of MX

18   Logic except when he was instructed by Donna Hanson to provide physical access to the

19   City server to third-party Information Technology personnel.

20        124.    On or about December 7, 2010, the City Clerk, Ms. Rachel Baker created a

21   meeting appointment through Microsoft Outlook for Chief Chen with Michael Bolasina. Due

22   to schedule conflicts, the meeting was ultimately set for December 15, 2010. Ms. Hanson had

23

24
    27 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

also requested that Chief Chen participate in an Emergency Preparedness meeting scheduled for the same time. Chief Chen pointed out the conflict to Ms. Hanson and she responded that the meeting with Mr. Bolasina would not take long, and Chief Chen could be late for the other meeting.

125.    Chief Chen was not given any information about whom Mr. Bolasina was and why he was meeting with him other than it had to do with unauthorized access of MX Logic. Without additional information or notice, Chief Chen assumed it was a meeting relating to his October 26, 2010 report to Ms. Hanson about Craig Fischer's access.

126.    On December 9, 2010, Chief Chen's divorce became final.

127.    On December 15, 2010, Chief Chen held the appointment in his police department office with Mr. Bolasina. The entire meeting lasted less than 15 minutes.

128.    As Chief Chen's supervisor, Ms. Hanson never gave Chief Chen any information or direction as to the purpose of this meeting or what role Mr. Bolasina had with regard to the City. Mr. Bolasina did not indicate in advance that Chief Chen was the subject of the questions, and Mr. Bolasina's role was not clear.

129.    Chief Chen found Mr. Bolasina's method of questioning odd and confusing. It was only after the meeting concluded that Chief Chen recognized that the questions about access to MX Logic were about his own access and not Craig Fischer's access. Because Chief Chen had authorized access to the system and no information about Mr. Bolasina's role had been given and only very little information about the purpose of the meeting with Mr. Bolasina, Chief Chen had answered the questions with a predisposed notion that they were about Craig Fischer's unauthorized access.

130.    Upon information and belief, during the investigation Michael Bolasina

28 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

obtained information from a third party that MX Logic had been accessed from multiple providers including Clearwire and Comcast.

131.    Upon information and belief, Mr. Bolasina suspected that Chief Chen was accessing the MX Logic system and sought to interview him. Mr. Bolasina contacted the City Manager's office to arrange for an interview of Chief Chen.

132.    Upon information and belief either (i) Ms. Hanson and/or others in her office told Mr. Bolasina that Chief Chen was unauthorized to access MX Logic; or (ii) Ms. Hanson and/or others in her office failed to tell Mr. Bolasina that Chief Chen had been provided a password and was authorized to access MX Logic; and/or (iii) Mr. Bolasina failed to inquire whether or not Chief Chen was authorized to access MX Logic.

133.    Ms. Hanson knew or should have known Chief Chen was under investigation and failed to inform Chief Chen.

134.    If Chief Chen had been informed by Donna Hanson of Mr. Bolasina's role and the purpose of the interview with Mr. Bolasina or if he had been given notice that he was under investigation, Chief Chen would not have misunderstood the context of Mr. Bolasina's questions and his responses would have been different. Instead, Chief Chen understood that another City employee, the one Chief Chen had reported to Ms. Hanson, Craig Fisher, was being investigated for unauthorized access to MX Logic. Chief Chen did not understand that Mr. Bolasina's questions were about his own access to MX Logic.

135.    Also as a result of the misunderstanding arising from neither Ms. Hanson nor Mr. Bolasina being candid with Chief Chen or providing him notice, Chief Chen was constrained in his responses because as Chief of Police he has knowledge which he must secure and Chief Chen had not been made aware whether Mr. Bolasina had clearance to access confidential police department information such as the specific purposes that MX

29 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Logic was legitimately accessed by the Chief of Police.

2          136.    The same day, December 15, 2010, Mr. Bolasina forwarded a draft

3    declaration to Chief Chen to sign. Chief Chen refused to sign it because it contained grossly

4    inaccurate characterizations of the facts.

5          137.    At this point, Chief Chen began to seriously suspect that he was the target of

6    an investigation by Mr. Bolasina. As a result, he made an appointment with Ms. Hanson to

7    discuss what was going on.

8          138.    Upon information and belief, Mr. Bolasina concluded Chief Chen accessed

9    the MX Logic system improperly and without authority. The complete basis of this

10   conclusion has never been disclosed to Chief Chen.

11         139.    Upon information and belief, Mr. Bolasina reported to Ms. Hanson that Chief

12   Chen lied to him during the investigation. Chief Chen did not lie to Mr. Bolasina.

13         140.    The content, findings, and conclusions of Mr. Bolasina's investigation have

14   been withheld from Chief Chen and the public.

15         141.    Despite the fact that the content, findings, and conclusions of Mr. Bolasina's

16   investigation have been withheld from Chief Chen and the public, the City's pretext reason

17   for terminating Chief Chen includes as a significant part of its basis the content, findings, and

18   conclusions of Mr. Bolasina's investigation.

19         142.    On the afternoon of Friday, December 17, 2010, Ms. Hanson and Chief Chen

20   met. The purpose of the meeting, from Chief Chen's perspective, was to obtain the truth from

21   Ms. Hanson as his direct supervisor as to whether Chief Chen was under investigation.

22         143.    In contrast to their previous interactions in which Ms. Hanson appeared not to

23

24   30 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  acknowledge Chief Chen, this meeting differed starkly. Ms. Hanson's tone and attitude were

2  aggressive, and her eye contact was glaring. During the short and heated meeting, Chief

3  Chen and Ms. Hanson argued about who had authorized or unauthorized access to the city e-

4  mail archive.

5          144.    Ultimately, Ms. Hanson pronounced to Chief Chen that he had lied during his

6  interview with Mr. Bolasina and that, with the full support of Mayor Jordan, she could fire

7  him on the spot. She gave Chief Chen the option of being placed on administrative leave or

8  resigning.

9          145.    Given Ms. Hanson's behavior and actions towards Chief Chen throughout

10  their employment together, in which she acted negatively, with bias, hostility, and

11  discrimination towards him, Chief Chen reacted emotionally. He was completely surprised

12  by this turn of events. Chief Chen's typical professional demeanor was broken by Ms.

13  Hanson's revelation that he was the one being investigated and by the sense of power that

14  she exuded when she threatened to fire him right then. Chief Chen took a blank sheet of

15  paper from Ms. Hanson's printer, and scrawled out his brief resignation to be effective

16  December 31, 2010.

17          146.    Chief Chen made the effective date December 31, 2010 to provide time to

18  reflect and allow cooler heads to prevail.

19          147.    Mr. Jordan knew that Chief Chen had informed council members of Ms.

20  Hanson's budget indiscretions regarding department head salaries as Mr. Jordan was

21  specifically informed of it by Chief Chen.  Mr. Jordan knew Ms. Hanson had opposed Chief

22  Chen's contract negotiations and proposal to change harbor patrol.  Mr. Jordan knew that

23

24

31 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Ms. Hanson held ill-will against Chief Chen about these items and failed to inform, bring to

2   the attention, or properly notify anyone investigating the actions of Chief Chen of the ulterior

3   motives Ms. Hanson.  Mr. Jordan further knew Ms. Hanson and the City had reason to cause

4   Chief Chen's constitutional rights to be violated, deny him due process, discriminate against

5   him, and retaliate against him in violation of First Amendment right to free speech.

6          148.    Mr. Jordan, Ms. Hanson, and the City were in a position to aid or prevent the

7   acts which violated Chief Chen's constitutional rights to be violated, the acts which denied

8   him due process, the acts which discriminated against him and the acts which retaliated

9   against him in violation of his First Amendment right to free speech.  All acts are pleaded

10  throughout this complaint but ultimately led to the threat to fire Chief Chen, ultimately

11  placing Chief Chen on administrative leave, and finally ultimately terminating Chief Chen.

12         149.    Mr. Jordan, Ms. Hanson, and the City failed to prevent or aid in preventing

13  the acts.

14         150.    Upon receiving Chief Chen's written resignation, Ms. Hanson suggested that

15  Lt. Yourkoski be named acting Chief. Chief Chen agreed to send an e-mail out to the

16  department to that effect. At that time, Chief Chen temporarily took back the resignation

17  letter from Ms. Hanson in order to a copy. Chief Chen retrieved keys and other

18  miscellaneous items, placed the items into envelopes and returned to Ms. Hanson's office

19  where he handed the items to her.

20         151.    The Medina Police Department Standards policy manual applies to the

21  Medina Chief of Police, including Chief Chen. The standards require:

22                 a.      that all complaints against an employee will be investigated and

23

24  32 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

properly documented;

b.      that affected employees who become subject to an internal affairs investigation will be given written notice within 10 days of an allegation that they are subject to an investigation, the allegations against the employee; and the employee's rights and responsibilities relative to the investigation;

c.      that an internal investigation should only commence when there is reasonable suspicion to believe an employee has violated a law, department policy, or regulation; and

d.      that internal investigations must be completed within 30 days unless extenuating circumstances exist.

152.    When the Chief of Police is the subject of a complaint or investigation, the complaint is directed to the City Manager's office.

153.    Ms. Hanson began an investigation into Chief Chen without reasonable suspicion to believe he had violated a law, department policy, or regulation.

154.    Prior to December 15, 2010, Ms. Hanson failed to provide any notice, written or otherwise, to Chief Chen that he was being investigated.

155.    Even after the December 17, 2010 meeting, Ms. Hanson still failed to provide proper notice to Chief Chen that he was being investigated and the aims of the investigation until the February 17, 2011 interview with Ms. Ellen Lenhart.

156.    Ms. Hanson failed to comply with the time and other requirements mandated by the Police Department Standards Manual.

157.    In this case, the Medina Police Department Standards policy manual was

33 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    entirely disregarded.

2       158.    During the initial investigation, upon information and belief, Ms. Hanson

3 failed to require that the investigator, Michael Bolasina, comply with and apply to Chief

4 Chen the policies mandated in the Medina Police Department Standards policy manual.

5       159.    At the time Michael Bolasina interviewed Chief Chen, Chief Chen either was

6 in fact under investigation or a potential target of an investigation and the policies laid out in

7 the Medina Police Department Standards policy manual should have been implemented. Mr.

8 Bolasina holds himself out as experienced in this manner of work and should have consulted

9 with Donna Hanson to determine whether there were any policies in place that he would be

10 required to follow. At the same time, Ms. Hanson as the City Manager should have told Mr.

11 Bolasina or at least inquired as to whether the policies contained in the Policy Manual

12 applied.

13       160.    The City reported Chief Chen's resignation to the Washington State Criminal

14 Justice Training Commission on or about December 21, 2010, well before its effective date

15 and what would have been his last date of employment. Chief Chen was not informed of the

16 report being sent to the Commission.

17       161.    At the time a police officer ceases employment, a report to the Washington

18 State Criminal Justice Training Commission is required within 10 days following the last day

19 of employment.

20       162.    Upon information and belief, the City has not dealt with any other employee

21 or officer's employment termination in this manner.

22       163.    Prior to the effective date of Chief Chen's resignation, Ms. Hanson or City

23

24    34 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1   personnel under her direction notified the City Council and the news media of his

2   resignation. Notifying the media effectively denied Chief Chen of the time period prior to the

3   effectiveness of the resignation to consider his resignation and revoke it without public

4   questioning, media reporting, and scrutiny regarding the reasons that he was taking the action

5   he was taking. This notice effectively took the personnel matter of Chief Chen's

6   contemplated resignation to be effective December 31, 2010, that was taken between Ms.

7   Hanson and Chief Chen and made it public more than 10 days prior to its effective date. By

8   her actions, or those actions at her direction, Ms. Hanson unilaterally made Chief Chen's

9   resignation effective immediately.

10      164.    Ms. Hanson destroyed Chief Chen's reputation by providing the press with

11   false information, failing to correct information falsely reported to the public by the press,

12   failing to correct information falsely reported by other third parties who relied on

13   information from the City Manager, and continuing to investigate Chief Chen in order to

14   create allegations to support his termination.

15      165.    The City adopted Ms. Hanson's acts and failed to correct her, alter her course,

16   or otherwise independently correct the false information that she disseminated.

17      166.    The next business day after Chief Chen resigned; Ms. Hanson reported the

18   resignation to media noting a variety of Chief Chen's accomplishments and accolades.

19      167.    After reflection and discussion with six out of the seven council members,

20   others in the police department and his family, Chief Chen was convinced that his

21   resignation was premature and should be rescinded.

22      168.    On December 23, 2010, Chief Chen notified Ms. Hanson of his decision to

23

24   35 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  rescind his resignation. On December 27, 2010, Ms. Hanson placed Chief Chen on

2  administrative leave without giving a reason. Ultimately, Ms. Hanson terminated Chief Chen

3  from City employment.

4      169.  Upon information and belief, during Mr. Bolasina's investigation, Craig

5  Fischer, a white City employee, was afforded the following: notice he was being

6  investigated, non-misleading information, no demand to sign a declaration stating he did not

7  have authority to access the MX Logic system, and retained his employment with the City.

8  Upon information and belief, Craig Fischer admitted to accessing MX Logic without

9  authority and for improper purposes.

10      170.  In contrast, Chief Chen was not given notice by the City Manager, that he was

11  being investigated by Mr. Bolasina. Chief Chen was misled as to the scope and purpose of

12  the interview. He was asked to sign a declaration stating he did not have authority to access

13  the MX Logic system, and when Chief Chen refused to sign the declaration because it was

14  inaccurate, he was labeled a liar and eventually terminated.

15      171.  The City has repeatedly represented that, as of December 23, 2010 or at the

16  time Chief Chen rescinded his resignation, "everyone" knew Chief Chen was going to be

17  terminated.

18      172.  During the first City Council meeting following Chief Chen's resignation and

19  rescission and being placed on administrative leave, in January 2011, the public outcry in

20  support of Chief Chen was significant and building. The mayor made a statement indicating

21  that he could not talk about the situation but that there would be an expeditious process and

22  resolution

23

24  36 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1    173.    The public response placed the City on notice that the reasons thus far

2   presented were not politically sufficient to terminate Chief Chen. Upon information and

3   belief, the City decided that additional investigation into Chief Chen was necessary in order

4   to support a decision of termination because at the time of the January council meeting there

5   was not sufficient reason, politically or legally.

6    174.    At that point Ms. Hanson began utilizing staff such as Rachel Baker and Dan

7   Yourkoski and other persons in the community to obtain "dirt" on Chief Chen.  In a manner

8   designed to justify her actions and the actions of Mr. Bolasina Donna Hanson began

9   significant and concerted efforts to create sufficient doubt as to Chief Chen's credibility.  Ms.

10  Hanson did not have a legitimate purpose for this action, instead her goal was to assure that

11  Chief Chen would never work in the public sector again as she had stated earlier to others.

12   175.    Prior to this time in December and continuing into early January 2011, Chief

13  Chen's counsel in Roger Skinner's lawsuit against the City and Chief Chen was Shannon

14  Ragonesi. At the same time, Ms. Ragonesi also represented only the City of Medina in a

15  different matter called *Rohrbach v. City of Medina/Weinberg*. Chief Chen was not a party in

16  the *Rohrbach* matter he was only a witness intended to be called by the City of Medina. Mr.

17  Bolasina, the same Mr. Bolasina who was hired by the WCIA to assist the City of Medina in

18  pre-termination investigation as to Chief Chen and Craig Fischer, could not also represent the

19  City of Medina in the *Rohrbach* case but he instead represented only the former City

20  Manager Mark Weinberg.

21   176.    Mr. Bolasina through working with the City of Medina and directly in

22  connection with Donna Hanson on the pre-termination investigation relating to Chief Chen

23

24  37 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  formed opinions regarding Chief Chen. Mr. Bolasina then took it upon himself to convey

2  those opinions to Chief Chen's attorney in the *Skinner* matter, Ms. Ragonesi, that Chief

3  Chen's credibility was now in question and in light of this development, the WCIA together

4  with the City settled the *Rohrbach* case internally blaming Chief Chen's conduct as

5  perceived by Mr. Bolasina and in conjunction with Donna Hanson as the reason the City lost

6  negotiating ground.

7      177.    Ms. Hanson relied upon Mr. Jordan, Mr. Boyd, and Mr. Nelson to keep the

8  public at bay while she created more allegations to justify her actions.  Ms. Hanson reported

9  to Council members that there was "more" that Chief Chen had done wrong. That the City

10  had hired a "state investigator" to "subpoena information from a large corporation" which

11  would ultimately prove the "more" that Chief Chen had done wrong.  It was clear that Mr.

12  Bolasina and those in his law office were aiding Ms. Hanson in this attempt to convey to the

13  Council members that there was "more."   The Council member's began spreading the

14  information within the community.  City Council members Nelson, Boyd, and Dicharry were

15  informing constituents that there was "more" to the story, there was information that they

16  could not reveal to the public, but once it was revealed, it would justify all the time that this

17  was taking and would justify Chief Chen being on administrative leave for one month.

18      178.    Mr. Dicharry's wife even reported it as the reason for the delay in the City

19  revealing the results of the pending investigation, "If only you knew, there is so much more"

20  however, "personnel matters need to remain private."  A community neighborhood near Mr.

21  Jordan reported the same thing and the community waited for the "more".

22      179.    All the while, upon the best information and belief that Chief Chen has been

23

24  38 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

able to obtain, there was no known state investigator, there was no known subpoena issued to a large corporation. The "more" proved to be untrue.  However, there was still more time to find a different "more" and with the help of Chief Chen's police department the City began to build a case based upon assertions that Chief Chen had failed to return his police department items when he resigned and later was placed on administrative leave; that he purchased an extra iPod for the department, that the iPod's he returned differed in storage capacity than the one's he purchased, that his time sheets indicated he was on "vacation" on a date he obtained gasoline in his police vehicle, that one particular voided ticket (of many) was questionable because the person's spouse subsequently became a council member, and that his record keeping specifically as to memoranda to the police department file was unacceptable in format because he used the "To" and "From" memorandum format in a manner that allowed person's outside the police department to question the purpose.

180.   Since Donna Hanson could not legitimately find any one issue to justify termination of Chief Chen, she instead relied upon many smaller issues and attempted to characterize them as deception by Chief Chen.  By this time Mr. Bolasina, who had failed to appreciate the true motive of Donna Hanson, had been utilized to investigate Chief Chen to such an extent that he advised the City of Medina to obtain new counsel.  Without first obtaining City council approval, Donna Hanson, through the WCIA hired Stephanie Alexander.  Mr. Bolasina and Ms. Hanson then jointly presented the "more" that had been discovered to the City Council in an executive session.  It is unknown precisely what occurred in that executive session, but following it, Ms. Alexander's role became more prevalent, investigator Ms. Lenhart was retained at the suggestion of the collective WCIA

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1    referred attorneys and represented  and reported the allegations to the Cit

2        181.    By January 27, 2011, Chief Chen had specifically requested that the City

3    afford him due process to halt and avoid the delay and on-going harm that was occurring to

4    his reputation.

5        182.    The City responded, through a letter signed by Ms. Hanson, but written by

6    Mr. Bolasina that Chief Chen would not be afforded the rights he was seeking and that they

7    were working as quickly as they could.

8        183.    Upon information and belief, beginning in or about early February 2011,

9    members of the City Council had been or began meeting privately to discuss the Chief Chen

10   investigation in detail. These meetings did not include all Council Members and excluded

11   Council Members Shawn Whitney and Janie Lee.

12       184.    As a result, the City Council essentially became a council of five rather than

13   seven members. There were meetings between council members where strategy was

14   discussed, information conveyed, and decisions made. Mayor Bret Jordan was instrumental

15   in this process.  He worked to cover up dissent among the council and insisted that the public

16   see only a "unified" council that was not going to interfere with the actions of the City

17   Manager.

18       185.    Despite being in a position to know that Ms. Hanson and others were denying

19   Chief Chen his constitutional rights, due process, the right to be free from discrimination and

20   retaliation in violation of his First Amendment right to free speech Mr. Jordan took no action

21   to aid or prevent Chief Chen's rights from being violated.   Mr. Jordan recited he must

22   comply with the "advice of counsel" referring to the City attorney(s). Yet Mr. Jordan knew

23

24
    40 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

of Ms. Hanson's bias toward Chief Chen, he knew that she would not act without bias and in a fair manner toward him. Mr. Jordan even knew or certainly should have known that Ms. Hanson had bias and retaliatory bias which caused malice toward Chief Chen.  Mr. Jordan knew that Ms. Hanson could be manipulative; he knew she could hide important information from the attorneys or council members so that fully informed decisions could be made.  Mr. Jordan knew that these and other tactics could be or were being employed by Ms. Hanson to construct an appearance of justification for the constructive termination and ultimately the termination of Chief Chen.  Mr. Jordan knew Ms. Hanson and others were providing information to the public that would damage Chief Chen's reputation and rather than aiding or preventing such harm, Mr. Jordan engaged in it as well.  Mr. Jordan engaged in the strategy in a variety of ways:  to continue digging for "more," inform the public "if you only knew what I know," authorize the second investigation knowing it would be tainted with the same bias, continue to allow the constructive termination, fail to take steps to afford due process, fail to require a full and impartial investigation and Loudermill hearing; and permit the harm to Chief Chen's reputation both within the City of Medina and outside to continue either directly or by implication.

186.    Mr. Bolasina, who had been acting as an attorney providing legal advice based upon his consultation with the city had allowed himself to be in a situation where he represented to the council that he may be a witness in the case and therefore recommended that the WCIA assign another attorney to represent the City in the Chen matter, Stephanie Alexander.

187.    Upon information and belief, Mayor Jordan and others determined that there

41 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   was insufficient evidence to terminate Chief Chen's employment and that more support was

2   required, and a second investigation was necessary.  Upon recommendation by the WCIA

3   and through attorney Stephanie Alexander with approval of Mr. Bolasina, Ellen Lenhart was

4   retained to conduct a supposed "independent investigation."

5        188.   Ms. Lenhart is a former attorney in the state of Washington whose current

6   business is to conduct "independent" investigations similar to one aspect of Mr. Bolasina's

7   work that he conducts. Both Mr. Bolasina and Ms. Lenhart know each other within their

8   professional community and have worked on cases together. Both Ms. Lenhart and Mr.

9   Bolasina derive their business in part from the WCIA and the attorneys that also derive their

10  work from the WCIA.

11       189.   Prior to Ms. Lenhart's interview with Chief Chen she provided him "Garrity

12  Rights" which at first glance appears to be affording Chief Chen his first and only "process"

13  but was merely done to intimidate Chief Chen.  Knowing that Ms. Lenhart was supposed to

14  be "independent" Chief Chen was hopeful that Ms. Lenhart would truly be independent and

15  would follow policy and procedure. Chief Chen desired to be able to provide information as

16  to all matters in order to absolve him of any suspicion, that proved the history and contempt

17  Ms. Hanson and others had for him and that would result in Ms. Lenhart finding as did the

18  Employment Security Department, that Ms. Hanson was intent on relieving Chief Chen from

19  employment.

20       190.   However, Chief Chen's expectations and hopes were quickly dashed as at the

21  conclusion of the interview Ms. Lenhart casually told Chief Chen that she was surprised to

22  see Mr. Hokanson's name in the information she was reviewing. She went on to say, she had

23

24  42 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    thought kindly of Mr. Hokanson as a gas station attendant who had given her a ride to her car

2    and such other courtesies in the past.  Chief Chen realized at that moment that there was no

3    possibility the second investigation would be unbiased, independent, or otherwise complete

4    or accurate.  Chief Chen had no opportunity for his information provided to be considered by

5    the investigator without bias.

6        191.    Throughout the second investigation, the City and Ms. Hanson continued to

7    fail to apply the policies mandated by the Medina Police Department Standards policy

8    manual to Chief Chen.

9        192.    Ms. Hanson began the second investigation into Chief Chen without

10   reasonable suspicion to believe he had violated a law, department policy, or regulation.

11   Instead, she again commenced an investigation in an attempt to oust Chief Chen and save her

12   own job.

13       193.    Ms. Hanson failed to provide complete, prior notice, written or otherwise, to

14   Chief Chen that he was being investigated and the aims of the investigation.

15       194.    Ms. Hanson failed to comply with the time requirements mandated by the

16   Police Department Standards Manual.

17       195.    During this second investigation, upon information and belief, Ms. Hanson

18   failed to require that the investigator, Ellen Lenhart, to comply with and apply to Chief Chen

19   the policies mandated in the Medina Police Department Standards policy manual.

20       196.    At the time Ellen Lenhart interviewed Chief Chen, Chief Chen was in fact

21   under investigation and the policies laid out in the Medina Police Department Standards

22   policy manual should have been implemented.

23

24   43 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

197.    During the second investigation nearly all of the requirements set forth in the Medina Police Department Standards policy manual were disregarded.

198.    Ms. Lenhart wrote a report after failing to interview persons that Chief Chen requested be interviewed, she based the report substantially on Mr. Bolasina, Ms. Hanson, and other persons who had learned information through Mr. Bolasina and Ms. Hanson. Ms. Lenhart did not remain independent and communicated with the City of Medina or its agent Stephanie Alexander about the investigation as it was proceeding.   Ms. Lenhart took direction from the City of Medina, particularly through its agent Ms. Alexander.   Ms. Lenhart gave deference to Mr. Bolasina's documents and information that he provided based upon her previous professional relationship with him and knowledge of him as performing similar work as she performs.

199.    On March 31, 2011, more than three months after placing Chief Chen on administrative leave, Ms. Hanson provided Chief Chen a "Loudermill/Pre-Disciplinary Notice." This was the first actual and written notice Chief Chen received of the complaints against him that the City was investigating. Chief Chen was also provided with "the Lenhart Report."

200.    The Loudermill notice claims Chief Chen (i) intentionally made materially false statements and fabricated information during both Mr. Bolasina's and Ms. Lenhart's investigations; (ii) forged memoranda in order to selectively void tickets; (iii) removed and/or destroyed data in City files; (iv) made questionable expenditures that *may* have been improper; (v) access of MX Logic for reasons other than performance of official duties; and (vi) loss of confidence of subordinates as a result of the foregoing acts.

44 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

201.    On April 14, 2011, Donna Hanson conducted a Loudermill hearing.  At the hearing Chief Chen wanted the opportunity to speak freely to whomever was conducting the Loudermill hearing but was afraid that a "he said/ she said" situation would continue as was apparently the basis of the allegations of dishonesty against Chief Chen. In an effort to assure accuracy in a record of Chief Chen's oral statements in the Loudermill Hearing, Chief Chen hired a court reporter to be present.  Chief Chen requested to be able to provide information orally (albeit with a court reporter present). The City, through its special counsel Ms. Alexander and Kari Sand from the City's regular law firm of Kenyon Disend, refused to permit the court reporter to stay and report the Loudermill proceedings.  The refusal was such that the City threatened to forfeit the right of a Loudermill hearing unless the court reporter removed himself.

202.    Chief Chen had no belief that his oral statements would not be misconstrued so rather than addressing the City in the Loudermill hearing orally as he desired, he orally read his written preparation. When the City denied him the right to record his oral statements with a court reporter, Chief Chen was constructively denied the opportunity orally respond at the Loudermill hearing.

203.    Similarly, Chief Chen brought two attorneys with him to the Loudermill hearing.  One attorney had been retained following failed settlement attempts where the City refused to bring the settlement offers to the attention of the full counsel and rather only to the attention of one or more council members.  That attorney effectuated resolution to various outstanding matters such as return of items the City had requested from Chief Chen. The other attorney was specifically for the purpose of defending the Loudermill hearing itself.

45 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1    Again, the City, through its two attorneys Alexander and Sand, threatened Chief Chen with

2    forfeiture of the Loudermill hearing if he insisted that both attorneys remain present at the

3    hearing.  Chief Chen then had no other choice but to choose one attorney to remain and

4    request the other leave.

5         204.    As the Loudermill hearing began, Chief Chen provided written objections to

6    the process he was being afforded. The written objections did not include objection to the

7    failure to allow a court reporter or to have the two chosen attorneys to both be present.  The

8    objections included: conflict of interest as being a witness, motive due to retaliation, bias,

9    and racial bias.  The objections fell on deaf ears, no action was taken, and again, Chief Chen

10   was told either proceed with the Loudermill with Donna Hanson as the decision-maker or

11   you forfeit your right to a Loudermill hearing.

12        205.    Chief Chen read from his written notes in order to have some record of what

13   was stated at the Loudermill hearing he read verbatim from the notes with the exception of

14   repetitive topics. At the end and for approximately one week later, the City demanded the

15   notes be provided by claiming, "you have until 5:00 PM to provide them" implying or else

16   they will not be considered.  However since they were verbatim that which was orally stated

17   at the Loudermill hearing it appeared that the oral statements Chief Chen made at the hearing

18   were forgotten or otherwise not going to be considered unless they were supported in

19   writing.  This is another reason why Chief Chen had desired a court reporter.

20        206.    On April 27, 2011, after the Loudermill hearing and based upon her bias,

21   Donna Hanson provided a list of reasons for terminating Chief Chen.  The reasons stated for

22   Chief Chen's employment termination are: dishonesty; abuse of position as Chief of Police;

23

24   46 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34ᵀᴴ STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

unauthorized removal and/or destruction of public records; improper access of City resources; improper access of City email archives; and loss of confidence of subordinate officers. These bases are pretext and based on false, inaccurate, or misunderstood facts.

207.    On June 24, 2010, Chief Chen filed a claim with the City under RCW 4.92. The claim was purposely not responded to after consideration by the City Council.  On July 1, 2010, Chief Chen filed a complaint with the Human Rights Commission which is automatically jointly filed with the Equal Employment Opportunities Commission. Investigation by the Human Rights Commission continues to be on going and Chief Chen anticipates that a response to the complaint will be forthcoming shortly.

## IV.    CAUSES OF ACTION

### Causes of Action Under Federal Law

#### (*Violations of 42 U.S.C. § 1981*)

208.    Plaintiff realleges and incorporates by reference all factual allegations contained above in the facts entitling plaintiff to relief and all allegations contained in causes of actions set forth in this Complaint as though fully stated in this cause of action.

209.    Defendants City, Hanson, and Jordan refused to afford Chief Chen a written employment contract on the basis of his race and refused to afford Chief Chen the same benefits, privileges, terms, and conditions as similarly-situated white persons, and in so doing acted with an intent or purpose to discriminate against Chief Chen based upon his race.

210.    Defendants City, Hanson, and Jordan violated 42 U.S.C. § 1981 when they refused to afford Chief Chen a written employment contract with Chief Chen on the basis of his race and refused to afford Chief Chen the same benefits, privileges, terms, and conditions

47 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    as similarly-situated white persons.

2        211.    Defendants City and Hanson terminated Chief Chen's employment on the

3    basis of his race, and in so doing acted with an intent or purpose to discriminate against Chief

4    Chen based upon his race.

5        212.    Defendants City and Hanson violated 42 U.S.C. § 1981 when they terminated

6    the employment contract with Chief Chen on the basis of his race.

7        213.    Defendants City, Hanson, and Jordan violated 42 U.S.C. § 1981 when they

8    retaliated against Chief Chen on the basis of race for seeking to exercise his right of freedom

9    to make and enforce contracts.

10       214.    Defendants Jordan and Hanson acted with malice or reckless indifference to

11   the federally protected rights of an aggrieved individual and they knew they were acting in

12   violation of federal law.

13       215.    Defendant City deprived Chief Chen of his rights afforded by 42 U.S.C. §

14   1981 through its implementation or execution of policy statements and/or by officially

15   adopting and promulgating decisions made by its officers, namely (but not limited to) the

16   Mayor and the City Manager, and/or through a government custom.

17       216.    Defendant City intentionally, and/or through knowing and reckless conduct,

18   deprived Chief Chen of rights secured by 42 U.S.C. § 1981.

19       217.    Defendant City deprived Chief Chen of rights secured by 42 U.S.C. § 1981

20   through the acts described herein of persons acting under color of state law.

21       218.    Defendant City's policies, adoption and promulgation of the Mayor's, City

22   Manager's, or other officer's decisions, and/or customs, which violate 42 U.S.C. § 1981,

23

24   48 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   caused Chief Chen harm.

2      219.   Defendants Jordan's and Hanson's violations of 42 U.S.C. § 1981 caused

3   Chief Chen harm.

4      220.   As a direct and proximate result of the acts and omissions of Defendants City,

5   Hanson, and Jordan, Chief Chen has suffered and will continue to suffer injury in the form of

6   special, general, and consequential damages in an amount to be proven at trial, including,

7   without limitation: loss of employment and career; past and future wages and benefits of

8   employment; loss of retirement benefits and account; loss of income earning potential;

9   stigma, humiliation and loss of reputation; emotional distress and suffering; loss of liberty

10   and enjoyment of life; adverse tax consequences; and attorney fees and costs.

11      ***(Violations of 42 U.S.C. § 1985(3))***

12      221.   Plaintiff realleges and incorporates by reference all factual allegations

13   contained above in the facts entitling plaintiff to relief and all allegations contained in causes

14   of actions set forth in this Complaint as though fully stated in this cause of action.

15      222.   Defendants Hanson, Jordan, and the City violated of 42 U.S.C. § 1985(3).

16      223.   Defendants Hanson, Jordan, and the City utilizing the original conspiracy

17   group and others, entered into a conspiracy or multiple conspiracies, the direct or indirect

18   purpose of which was to deprive Chief Chen of equal protection of the laws based on his race

19   or national origin.

20      224.   Defendants Hanson, Jordan, and the City committed overt acts in furtherance

21   of the conspiracy, including, without limitation, placing Chief Chen on administrative leave,

22   commencing investigations into Chief Chen's conduct without notice, and terminating Chief

23

24   49 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  Chen's employment.

2      225.   Defendant Hanson's termination of Chief Chen's employment as well as the

3  other overt acts of Defendants Hanson, Jordan, and the City caused injury to Chief Chen in

4  his property by directly and proximately resulting, *inter alia*, in loss of employment and

5  economic loss, deprived him of his right as a United States citizen to be free from improper

6  racial and national origin discrimination under the Fourteenth Amendment of the

7  Constitution, and injured his reputation and ability to obtain employment.

8      226.   As a direct and proximate result of the acts and omissions of Hanson and

9  Mayor Jordan, Chief Chen has suffered and will continue to suffer injury in the form of

10  special, general, and consequential damages in an amount to be proven at trial, including,

11  without limitation: loss of employment and career; past and future wages and benefits of

12  employment; loss of retirement benefits and account; loss of income earning potential;

13  stigma, humiliation and loss of reputation; emotional distress and suffering; loss of liberty

14  and enjoyment of life; adverse tax consequences; and attorney fees and costs.

15              (*Violations of 42 U.S.C. § 1986*)

16      227.   Plaintiff realleges and incorporates by reference all factual allegations

17  contained above in the facts entitling plaintiff to relief and all allegations contained in causes

18  of actions set forth in this Complaint as though fully stated in this cause of action.

19      228.   Defendants Hanson and Jordan had prior knowledge of the wrongs alleged

20  and incorporated by reference herein. Mr. Jordan and Ms. Hanson knew that Chief Chen was

21  authorized to access MX Logic, they knew he was under investigation and failed to provide

22  notice, they knew he had the right to free speech in informing City council members the Ms.

23

24  50 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Hanson had instructed persons to place raises in a budget contrary to the intent, position and

2    policy adopted by the council, they knew that they were retaliating against Chief Chen in

3    violation of the law; they knew that his due process rights were not being afforded; they

4    knew that the Loudermill necessarily had a biased decision-maker.  Bret Jordan knew that

5    Donna Hanson was influenced by the original conspiracy group and that she behaved in a

6    discriminatory fashion toward Chief Chen.

7           229.    Defendants Hanson and Jordan had the ability to prevent or aid in preventing

8    the wrongs alleged.  Ms. Hanson and Mr. Jordan could have informed the investigators of the

9    harm Chief Chen had suffered in the City of Medina previously, they could have stopped the

10   current harm from happening; they could have inquired directly of Chief Chen early on,

11   followed up and adhered to promises to be fair and just in their investigation; they could have

12   inquired and provided a true opportunity to be heard in a Loudermill hearing with a proper

13   decision-maker who held no clear bias toward Chief Chen, they could have secured truly

14   independent investigators to conduct proper investigations, they could have informed Chief

15   Chen that he too was under investigation, they could have not manipulated the process to

16   obtain "more" for the purpose of harming Chief Chen and his reputation.

17          230.    Defendants Hanson and Jordan neglected or refused to prevent or aid in

18   preventing the wrongs alleged.

19          231.    Defendants Hanson and Jordan, by reasonable diligence, could have

20   prevented the wrongs alleged.

21          232.    As a direct or proximate result of Defendants Hanson and Jordan's neglect or

22   refusal to prevent or aid in preventing the wrongs alleged, Chief Chen has been harmed

23

24

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1  through loss of employment and economic loss, deprivation of his right as a United States

2  citizen to be free from improper racial and national origin discrimination under the

3  Fourteenth Amendment of the Constitution, and injury to his reputation and ability to obtain

4  employment.

5      233.   Chief Chen has suffered and will continue to suffer injury in the form of

6  special, general, and consequential damages in an amount to be proven at trial, including,

7  without limitation: loss of employment and career; past and future wages and benefits of

8  employment; loss of retirement benefits and account; loss of income earning potential;

9  stigma, humiliation and loss of reputation; emotional distress and suffering; loss of liberty

10  and enjoyment of life; adverse tax consequences; and attorney fees and costs.

11  *(**Violations of 42 U.S.C. § 1983 –***
   ***Deprivation of the 14th Amendment Right to Equal Protection***)*

12

13      234.   Plaintiff realleges and incorporates by reference all factual allegations

14  contained above in the facts entitling plaintiff to relief and all allegations contained in causes

   of actions set forth in this Complaint as though fully stated in this cause of action.

15      235.   Defendants City and Hanson treated Chief Chen differently than past and

16  current similarly situated City employees.

17      236.   The City and Hanson acted with an intent or purpose to discriminate against

18  Chief Chen based upon his race and/or national origin.

19      237.   Chief Chen's race and national origin were substantial or motivating factors

20  for all of the adverse actions described herein.

21      238.   Defendants City and Hanson intentionally, and/or through knowing and

22  reckless conduct, deprived Chief Chen of his right to equal protection secured by the United

23

24  52 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   States Constitution and laws of the United States.

2       239.    The deprivations inflicted by the City and Hanson were committed by persons

3   acting under color of state law.

4       240.    The City implemented or executed unconstitutional policy statements and/or

5   officially adopted and promulgated unconstitutional decisions made by its officers, namely

6   (but not limited to) the City Manager.

7       241.    The City deprived Chief Chen of his constitutional rights through a

8   governmental custom.

9       242.    The City's unconstitutional policies, adoption of the City Manger's decisions,

10  and/or customs caused Chief Chen harm.

11      243.    As a direct and proximate result of Defendants' actions Chief Chen has

12  suffered and been harmed. Chief Chen has suffered and will continue to suffer injury in the

13  form of special, general, and consequential damages in an amount to be proven at trial,

14  including, without limitation: loss of employment and career; past and future wages and

15  benefits of employment; loss of retirement benefits and account; loss of income earning

16  potential; stigma, humiliation and loss of reputation; emotional distress and suffering; loss of

17  liberty and enjoyment of life; adverse tax consequences; and attorney fees and costs.

18                      (*Violations of 42 U.S.C. § 1983 –*
                 *Violations of the 14th Amendment Right to Procedural Due Process*)

19

20      244.    Plaintiff realleges and incorporates by reference all factual allegations

21  contained above in the facts entitling plaintiff to relief and all allegations contained in causes

of actions set forth in this Complaint as though fully stated in this cause of action.

22

23      245.    Chief Chen had a property interest in his job due to a reasonable expectation

24

53 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   in his continued employment by the City of Medina and its Police Department. Chief Chen's

2   reasonable expectations arose from, among other things, policies, procedures, practices and

3   customs of the City, including those for terminating past and current police chiefs only for-

4   cause and with due process.

5          246.    Chief Chen has a liberty interest in his good name, reputation, honor, and/or

6   integrity as a person and as a police officer and Chief of Police.

7          247.    Defendants City and Hanson allege Chief Chen's employment was terminated

8   because he was dishonest, abused his position, violated city code and police department

9   policies, lost the confidence of his subordinates, and negatively impacted the police

10  department. These bases directly and indirectly seriously damaged and/or decimated Chief

11  Chen's good name, reputation, honor, and/or integrity as a person and as a police officer and

12  Chief of Police.

13         248.    The City and Hanson created and disseminated a false and defamatory

14  impression to the community and public about Chief Chen in connection with his termination

15  thereby permanently damaging his reputation.

16         249.    The City and Hanson violated Chief Chen's procedural due process rights

17  under the Fourteenth Amendment of the United States Constitution when they failed to

18  provide adequate notice of the reasons for his termination and thereby denied Chief Chen a

19  reasonable opportunity to respond.

20         250.    The City and Hanson violated Chief Chen's procedural due process rights

21  under the Fourteenth Amendment of the United States Constitution when pre-termination

22  proceedings were biased and not impartial.

23

24  54 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

251.    The City and Hanson violated Chief Chen's procedural due process rights under the Fourteenth Amendment of the United States Constitution when pre-termination proceedings were informal and did not afford Chief Chen the opportunity to present witnesses or to cross-examine witnesses against him and no post-termination proceeding was held.

252.    The City and Hanson violated Chief Chen's procedural due process rights under the Fourteenth Amendment of the United States Constitution when pre-termination proceedings did not afford Chen the opportunity to present witnesses or to cross-examine witnesses against him and no post-termination proceeding was held and significant factual issues alleged as the basis for Chen's termination are in dispute.

253.    The City and Hanson violated Chief Chen's procedural due process rights under the Fourteenth Amendment of the United States Constitution when Chief Chen was not afforded procedural rights afforded previous and current Medina Chiefs of Police., including but not limited to the right to review of pre-termination hearings.

254.    The City and Hanson violated Chief Chen's procedural due process rights under the Fourteenth Amendment of the United States Constitution when Chief Chen was not afforded procedural rights required to be afforded the Chief of Police under the Medina Police Department Manual of Standards Chapter 52.1.

255.    The City and Hanson violated Chief Chen's procedural due process rights under the Fourteenth Amendment of the United States Constitution when Chief Chen was not afforded a full and complete post-termination hearing.

256.    The above-described actions of Defendants caused Chief Chen to be deprived

55 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

of a liberty interest in his reputation for honesty and opportunity for future law enforcement employment, related employment, or any other employment. It also caused him to be deprived a property interest in his employment without due process.

257.    Defendants City and Hanson intentionally, and/or through knowing and reckless conduct, deprived Chief Chen of his right to due process secured by the United States Constitution and laws of the United States.

258.    The deprivations inflicted by the City and Hanson were committed by persons acting under color of state law.

259.    The City implemented or executed unconstitutional policy statements and/or officially adopted and promulgated unconstitutional decisions made by its officers, namely (but not limited to) the City Manager.

260.    The City deprived Chief Chen of his constitutional rights through a government custom.

261.    The City's unconstitutional policies, adoption of the City Manger's decisions, and/or customs caused Chief Chen to be deprived of his liberty and property interests. As a direct and proximate result of the acts and omissions of Defendants City and Hanson, Chief Chen has suffered and will continue to suffer injury in the form of special, general, and consequential damages in an amount to be proven at trial, including, without limitation: loss of employment and career; past and future wages and benefits of employment; loss of retirement benefits and account; loss of income earning potential; stigma, humiliation and loss of reputation; emotional distress and suffering; loss of liberty and enjoyment of life; adverse tax consequences; and attorney fees and costs.

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

**(*Violations of 42 U.S.C. § 1983 –***
*Deprivations of the 14th Amendment Right to Substantive Due Process*)**

262.    Plaintiff realleges and incorporates by reference all factual allegations contained above in the facts entitling plaintiff to relief and all allegations contained in causes of actions set forth in this Complaint as though fully stated in this cause of action.

263.    Chief Chen has a liberty interest in and right to pursue the occupation of his choice, and a fundamental right to free speech. These interests were clearly established at the time Chief Chen's employment was terminated.

264.    Defendant Hanson should have been aware that commencing and pursuing an investigation of Chief Chen in retaliation for his truthful whistle-blowing violated his constitutionally protected right to free speech.

265.    Defendant City and Hanson terminated Chief Chen's employment in such a manner as to effectively bar Chief Chen from pursuing his occupation in either the public or private sector.

266.    Defendant Hanson should have been aware that terminating Chief Chen in this manner violated his liberty interest in the right to pursue the occupation of his choice.

267.    Defendant City and Hanson's termination of Chief Chen's employment was wholly arbitrary and capricious or irrational, and/or utterly fails to serve a legitimate purpose.

268.    Defendants City and Hanson intentionally, and/or through knowing and reckless conduct, deprived Chief Chen of his right to due process secured by the United States Constitution and laws of the United States.

269.    The deprivations inflicted by the City and Hanson were committed by persons acting under color of state law.

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

270.     The City implemented or executed unconstitutional policy statements and/or officially adopted and promulgated unconstitutional decisions made by its officers, namely (but not limited to) the City Manager.

271.     The City deprived Chief Chen of his constitutional rights through a government custom.

272.     The City's unconstitutional policies, adoption of the City Manger's decisions, and/or customs caused Chief Chen to be deprived of his liberty interest and fundamental right of free speech.

273.     As a direct and proximate result of the City and Hanson's actions, Chief Chen is unable to pursue the occupation of his choice and this inability is caused by the City's actions that were arbitrary and lacking a rational basis.

274.     The City and Hanson's actions caused a chilling effect on Chief Chen's fundamental right to free speech.

275.     As a direct and proximate result of the acts and omissions of Defendants City and Hanson, Chief Chen has suffered and will continue to suffer injury in the form of special, general, and consequential damages in an amount to be proven at trial, including, without limitation: loss of employment and career; past and future wages and benefits of employment; loss of retirement benefits and account; loss of income earning potential; stigma, humiliation and loss of reputation; emotional distress and suffering; loss of liberty and enjoyment of life; adverse tax consequences; and attorney fees and costs.

(***Unlawful Retaliatory Termination in Violation of the First Amendment***)

276.     Plaintiff realleges and incorporates by reference all factual allegations

58 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1    contained above in the facts entitling plaintiff to relief and all allegations contained in causes

2    of actions set forth in this Complaint as though fully stated in this cause of action.

3          277.    Chief Chen's communication to the City Council regarding budget issues and

4    City contracts for harbor patrol is protected speech about matters of public concern, and

5    therefore, conduct protected by the First Amendment to United States Constitution.

6          278.    The content, form, and context of Chief Chen's speech and activities on

7    improper governmental activities demonstrate that he was addressing a matter of public

8    interest and concern.

9          279.    Chief Chen's protected speech activities were professional in nature, well

10   considered, well-timed, professionally appropriate, backed by facts and appropriate analysis,

11   and respectful of potential dissenting and dis-proving facts and opinions.

12         280.    In 2010, Defendants the City and Hanson punished Chief Chen for his First

13   Amendment activities by initiating an investigation targeting him, threatening to fire him on

14   the spot (thereby directly forcing his short-lived resignation), placing him on administrative

15   leave, and conducting a second investigation that was wide-ranging and veered well outside

16   the boundaries of governing standards, and designed with the intent to result in his

17   termination. Predictably, Chief Chen was then terminated because of his protected speech

18   activities.

19         281.    The activities the City and Hanson engaged in were committed under color of

20   state law and inhibit the free exercise of the right to free speech under the First Amendment.

21         282.    Chief Chen's protected conduct was a substantial or motivating factor in the

22   decision to retaliate against, investigate, discipline, sanction, and terminate his employment.

23

24

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

283.    Defendants' alleged non-retaliatory reasons for investigating and terminating Chief Chen are pretexts for retaliation.

284.    Defendant Hanson's actions, findings, and decisions regarding Chief Chen were known to and ratified by the City.

285.    The termination of Chief Chen was unfounded and without just cause.

286.    Chief Chen's termination was, therefore, unlawful retaliation in violation of his rights under the First Amendment.

287.    As a direct and proximate result of the acts and omissions of Defendants City and Hanson, Chief Chen has suffered and will continue to suffer injury in the form of special, general, and consequential damages in an amount to be proven at trial, including, without limitation: loss of employment and career; past and future wages and benefits of employment; loss of retirement benefits and account; loss of income earning potential; stigma, humiliation and loss of reputation; emotional distress and suffering; loss of liberty and enjoyment of life; adverse tax consequences; and attorney fees and costs.

**(*Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2*)**

*(This claim is pending and EEOC Right to Sue determination; the complaint was filed July 1, 2010 with the Human Rights Commission and the response from both the Commission and the EEOC is expected within short order. This claim is included at this time for notice.)*

288.    Plaintiff realleges and incorporates by reference all factual allegations contained above in the facts entitling plaintiff to relief and all allegations contained in causes of actions set forth in this Complaint as though fully stated in this cause of action.

289.    Defendants City and Hanson discriminated against Chief Chen on the basis of his race and/or national origin.

60 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34ᵀᴴ STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

290.    As evidenced by her comments, acts, and omissions, Ms. Hanson treated Chief Chen differently from other non-Chinese-Americans employed by the City of Medina.

291.    Defendant Hanson's treatment of Chief Chen affected the compensation, terms, conditions, and/or privileges of Chief Chen's employment, and Chief Chen was ultimately discharged because of his race and/or national origin. Chief Chen's race and/or national origin were motivating factors of Hanson's treatment of him.

292.    The bases alleged by Ms. Hanson for Chief Chen's termination are pretext.

293.    Any loss of confidence by the police force in Chief Chen was a direct and proximate result of the City and Ms. Hanson's discrimination.

294.    Defendant Hanson's comments, acts, and omissions constitute unlawful disparate treatment of Chief Chen.

295.    Defendant City is vicariously liable for Ms. Hanson's unlawful disparate treatment of Chief Chen.

296.    Defendant City treated Chief Chen differently from other non-Chinese-Americans employed by the City of Medina.

297.    The City's treatment of Chief Chen affected the terms and conditions of Chief Chen's employment the compensation, terms, conditions, and/or privileges of Chief Chen's employment, and Chief Chen was ultimately discharged because of his race and/or national origin. Chief Chen's race and/or national origin were motivating factors of the City's treatment of him.

298.    The City's comments, acts, and omissions constitute unlawful disparate treatment of Chief Chen.

61 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

299.    The City is directly liable for Ms. Hanson's unlawful disparate treatment of Chief Chen.

300.    As a direct and proximate result of the unlawful disparate treatment that the City and Hanson inflicted, Chief Chen suffered harm.

301.    The City and Hanson created and supported a hostile work environment.

302.    Hanson routinely ignored and belittled Chief Chen in staff meetings and made blatant racist comments directed at Chief Chen and Asian-Americans in front of staff and Chief Chen.

303.    Hanson's comments, acts, and omissions were humiliating and unreasonably interfered with Chief Chen's performance.

304.    The City supported an atmosphere of pervasive racial hostility against persons of Asian descent.

305.    A reasonable Asian-American or Chinese-American person would find the City workplace so objectively and subjectively racially hostile as to create an abusive working environment.

306.    The City, through its management level employees, knew or in the exercise of reasonable care should have known of the harassment but did not take adequate steps to address it.

307.    The City failed to take adequate remedial and disciplinary action. Any remedial actions that were taken not adequate because they were not designed to prevent future conduct by actual harassers and by other potential harassers.

308.    Defendants Jordan and Hanson acted with malice or reckless indifference to

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

1   the federally protected rights of an aggrieved individual and they knew they were acting in

2   violation of federal law.

3       309.    As a direct and proximate result of the hostile work environment, Chief Chen

4   suffered harm.

5       310.    As a direct and proximate result of the acts and omissions of Defendants City

6   and Hanson, Chief Chen has suffered and will continue to suffer injury in the form of special,

7   general, and consequential damages in an amount to be proven at trial, including, without

8   limitation:  loss  of  employment  and  career;  past  and  future  wages  and  benefits  of

9   employment; loss of retirement benefits and account; loss of income earning potential;

10  stigma, humiliation and loss of reputation; emotional distress and suffering; loss of liberty

11  and enjoyment of life; adverse tax consequences; and attorney fees and costs.

12      311.    Prior to bringing this lawsuit, Chief Chen filed a charge with the Washington

13  Human Rights Commission that was also considered by the federal Equal Employment

14  Opportunity Commission.

15  **(*Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3*)**

16  *(This claim is pending and EEOC Right to Sue determination; the complaint was filed July 1,*
    *2010 with the Human Rights Commission and the response from both the Commission and*
17  *the EEOC is expected within short order. This claim is included at this time for notice.)*

18      312.    Plaintiff  realleges  and  incorporates  by  reference  all  factual  allegations

19  contained above in the facts entitling plaintiff to relief and all allegations contained in causes

20  of actions set forth in this Complaint as though fully stated in this cause of action.

21      313.    Defendants City and Hanson discriminated against Chief Chen on the basis of

22  his race and/or national origin by altering his conditions or privileges of employment when

23

24  63 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   he was forced to resign and when he was placed on administrative leave.

2   314.   Chief Chen opposed these unlawful employment practices by rescinding his

3   resignation and by requesting notice of the City and Hanson's basis for placing him on

4   administrative leave.

5   315.   Chief Chen engaged in the protected activity of reporting misuse of

6   governmental funds. As a result, Chief Chen was forced to resign and placed on

7   administrative leave. Chief Chen's report caused Hanson to force Chief Chen's resignation

8   and then place him on administrative leave.

9   316.   The City and Hanson's alleged reasons for their actions are mere pretext and

10   discriminatory motives more likely motivated their acts.

11   317.   As a direct and proximate result of the acts and omissions of Defendants City

12   and Hanson, Chief Chen has suffered and will continue to suffer injury in the form of special,

13   general, and consequential damages in an amount to be proven at trial, including, without

14   limitation:  loss of employment and career;  past and future wages and benefits of

15   employment; loss of retirement benefits and account; loss of income earning potential;

16   stigma, humiliation and loss of reputation; emotional distress and suffering; loss of liberty

17   and enjoyment of life; adverse tax consequences; and attorney fees and costs.

18   **Causes of Action Under Washington Law**

19   (*Employment Discrimination –*
*Violations of the Washington Law against Discrimination -RCW 49.60.180*)

20

21   318.   Plaintiff realleges and incorporates by reference all factual allegations

22   contained above in the facts entitling plaintiff to relief and all allegations contained in causes

of actions set forth in this Complaint as though fully stated in this cause of action.

23

24   64 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

319.    Defendants City and Hanson discriminated against Chief Chen in compensation and in other terms or conditions of employment because of Chief Chen's race and/or national origin in violation of RCW 49.60.180.

320.    Defendants City and Hanson discharged Chief Chen from employment because of Chief Chen's race and/or national origin in violation of the Washington Discrimination Statute, RCW 49.60.180.

321.    Defendants City and Hanson treated Chief Chen differently than other similarly situated City employees throughout his employment, and in the processes undertaken to investigate him, place him on administrative leave and ultimately terminate his employment. This different treatment was based upon Chief Chen's race and/or national origin in violation of the Washington Discrimination Statute, RCW 49.60.180.

322.    Defendants City and Hanson's discrimination forced Chief Chen to resign because of Chief Chen's race and/or national origin and resulted in his constructive discharge in violation of RCW 49.60.180.

323.    Defendants City and Hanson's discriminatory conduct is a breach of the City of Medina employment policies and/or implied contract of employment and has caused Chief Chen injury in the form of the following damages:

a.      Lost back pay, wages, and benefits in amounts to be established at trial;

b.      Lost future (front) pay, wages, and benefits in amounts to be established at trial;

c.      Out of pocket expenses, litigation costs, and attorney fees in amounts to be established at trial;

d.      Damages for harm to reputation and emotional distress; and

e.      Loss of employment as the Chief of Police for the City of Medina for which

65 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

Chief Chen requests reinstatement from the court to his former position as Chief of Police with the City of Medina.

### (*Wrongful Termination under Washington Law – Violations of Public Policies*)

324.     Plaintiff realleges and incorporates by reference all factual allegations contained above in the facts entitling plaintiff to relief and all allegations contained in causes of actions set forth in this Complaint as though fully stated in this cause of action.

325.     Pursuant to RCW 42.40.010, a public policy exists encouraging public employees to report "improper governmental actions."

326.     Chief Chen reported improper conduct by Ms. Hanson and other City employees to the City Council and/or to the Mayor.

327.     As a result of Chief Chen's reports, the City and Ms. Hanson launched an investigation that targeted Chief Chen causing directly and proximately Chief Chen's employment termination.

328.     During the course of this investigation, Ms. Hanson and/or other City employees withheld material information or provided false information to the investigator about Chief Chen's authorization to access MX Logic. In addition, the City and Ms. Hanson escalated the investigation by failing to inform the investigator that Chief Chen had a legitimate purpose for accessing the MX Logic system and used various other facts out of context for the purpose of casting Chief Chen in a negative light.

329.     Ms. Hanson and the City generated false information that was used to justify placing Chief Chen on administrative leave and then terminating his employment.

330.     Chief Chen's reporting of improper governmental action caused the investigation, harm to his reputation, and resulting termination.

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

331.    The City's investigation, acts harming Chief Chen's reputation, and termination of Chief Chen as a result of his report of improper governmental action discourages such reporting and jeopardizes the public policy.

332.    A public policy exists that clearly mandates performance of public duties or obligations.

333.    Chief Chen performed various public duties and obligations as Chief of Police, including but not limited to reporting improper budgeting conduct by Ms. Hanson and other City employees to the City Council.

334.    As a result of Chief Chen's reports, the City and Ms. Hanson launched an investigation that targeted Chief Chen causing directly and proximately Chief Chen's employment termination

335.    Following the City Council's confrontation of Ms. Hanson about the improper conduct, Ms. Hanson launched an investigation which ultimately targeted Chief Chen. As a result of events within that investigation that Ms. Hanson failed to mitigate with information that she had, Chief Chen's reputation was harmed and he was ultimately terminated.

336.    Chief Chen's performance of public duties and obligations caused the investigation and resulting termination.

337.    The City's investigation and termination of Chief Chen as a result of his performance of public duties and obligations discourages such performance and jeopardizes the public policy.

338.    A public policy exists that clearly mandates that an employee may exercise his legal rights and privileges.

339.    Chief Chen exercised his legal rights and privileges, including but not limited to reporting improper budgeting conduct by Ms. Hanson and other City employees to the

67 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

City Council.

340.    As a result of Chief Chen's reports, the City and Ms. Hanson launched an investigation that targeted Chief Chen causing directly and proximately Chief Chen's employment termination.

341.    Chief Chen's exercise of his legal rights and privileges caused the investigation and resulting termination.

342.    The City's investigation and termination of Chief Chen as a result of his actions to exercise his legal rights and privileges discourages such exercise and jeopardizes the public policy.

343.    Ms. Hanson's termination of Chief Chen violated RCW 49.60.210.

344.    The City's implicitly or explicitly approved and adopted Ms. Hanson's decision in violation of RCW. 49.60.210.

345.    The City and Ms. Hanson's breaches of public policy and violations of RCW 49.40.210 caused Chief Chen injury in the form of the following damages:

a.    Lost back pay, wages, and benefits in amounts to be established at trial;

b.    Lost future (front) pay, wages, and benefits in amounts to be established at trial;

c.    Out of pocket expenses, litigation costs, and attorney fees in amounts to be established at trial

d.    Damages for harm to reputation and emotional distress, and

e.    Loss of employment as the Chief of Police for the City of Medina for which Chief Chen requests reinstatement from the court to his former position as Chief of Police with the City of Medina.

68 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

***(Wrongful Termination under Washington Law –
Retaliatory Discharge)***

346.    Plaintiff realleges and incorporates by reference all factual allegations contained above in the facts entitling plaintiff to relief and all allegations contained in causes of actions set forth in this Complaint as though fully stated in this cause of action.

347.    Pursuant to RCW 42.40.010-.030, a public employee has a statutorily protected right to report "improper governmental actions."

348.    Chief Chen reported improper conduct by Ms. Hanson and other City employees to the City Council and/or to the Mayor.

349.    Immediately following the City Council's confrontation of Ms. Hanson about the improper conduct, Ms. Hanson provided information or lack of information through an investigation of another employee such that the investigation instead targeted Chief Chen. In addition, Ms. Hanson, through and with other city employees and/or council members, sought to escalate the investigation by failing to inform the investigator that Chief Chen had a legitimate purpose for accessing the MX Logic system and used various other facts out of context for the purpose of casting Chief Chen in a negative light.

350.    As a result of the actions of Hanson and other City of Medina employees and/or Council Members false, incomplete, and/or speculative information was generated and used to justify Ms. Hanson's actions to the City Council such that Ms. Hanson felt confident that the City Council would determine Ms. Hanson was justified in placing Chief Chen on administrative leave and eventually terminating him.

351.    Chief Chen's reporting of improper governmental action caused the City and Ms. Hanson's acts and omissions that forced Chief Chen to resign and led to his being placed on administrative leave.

352.    Chief Chen's reporting of improper governmental action also caused the City

69 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

and Ms. Hanson's acts and omissions that harmed Chief Chen's reputation and directly and proximately resulted in his termination.

353.    The City and Ms. Hanson's acts and omissions, discourages such reporting and jeopardizes the public policy.

354.    The City's investigation and termination of Chief Chen as a result of his report of improper governmental action constitutes unlawful retaliatory discharge.

355.    The City's unlawful retaliatory discharge has caused Chief Chen injury in the form of the following damages:

    a.    Lost back pay, wages, and benefits in amounts to be established at trial;

    b.    Lost future (front) pay, wages, and benefits in amounts to be established at trial;

    c.    Out of pocket expenses, litigation costs, and attorney fees in amounts to be established at trial; and

    d.    Damages for harm to reputation and emotional distress, and

    e.    Loss of employment as the Chief of Police for the City of Medina for which Chief Chen requests reinstatement from the court to his former position as Chief of Police with the City of Medina.

*(**Wrongful Termination under Washington Law –
Breach of Employment Policy**)*

356.    Plaintiff realleges and incorporates by reference all factual allegations contained above in the facts entitling plaintiff to relief and all allegations contained in causes of actions set forth in this Complaint as though fully stated in this cause of action.

357.    The Medina Police Department Standards policy manual applies to the Chief of Police.

358.    The Medina Police Department Standards policy manual requires:

70 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

a.     that all complaints against an employee will be investigated and properly documented (MPDS No. 52.1.1);

b.     that affected employees who become subject to an internal affairs investigation will be given written notice that they are subject to an investigation, the allegations against the employee; and the employee's rights and responsibilities relative to the investigation (MPDS No. 52.1.6);

c.     that an internal investigation should only commence when there is reasonable suspicion to believe an employee has violated a law, department policy, or regulation (MPDS No. 52.1.1(I)(C)(2)); and

d.     that internal investigations must be completed within 30 days unless extenuating circumstances exist (MPDS 52.1.4(I)).

359.    Section 52 of the Medina Police Department Standards policy manual applies to the Medina Chief of Police, including Chief Chen. When the Chief of Police is the subject of a complaint or investigation, the complaint is directed to the City Manager's office (MPDS No. 52.1.2(II)).

360.    This policy constitutes a promise of specific treatment in the case of a complaint or investigation, and thus limits the City's right to terminate an officer, including the Chief of Police, when termination arises out of a complaint or investigation.

361.    Sections 26.1.4–26.1.8 of the Medina Police Department Standards policy manual applies to the Medina Chief of Police, including Chief Chen. The disciplinary standards set forth in the policy under Section 26.1.4–26.1.8 of the Medina Police Department Standards constitutes a promise of specific treatment in the case of a discipline, and thus limits the City's right to terminate an officer, including the Chief of Police.

362.    The Medina Police Department Standards policy manual constitutes an

71 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

implied contract of employment such that Chief Chen's employment can only be terminated for good cause and only in conformity with the Police Department Standards policy manual.

363.    The City and Ms. Hanson breached specific promises of treatment set out in the Police Department Standards policy manual and breached Chief Chen's contract of employment when Chief Chen's employment was terminated without good cause and without conforming the Police Department Standards policy manual.

364.    The City and Ms. Hanson's discriminatory conduct and breach of employment policies and/or implied contract of employment has caused Chief Chen the following damages:

a.    Lost back pay, wages, and benefits in amounts to be established at trial;

b.    Lost future (front) pay, wages, and benefits in amounts to be established at trial;

c.    Out of pocket expenses, litigation costs, and attorney fees in amounts to be established at trial;

d.    Damages for harm to reputation and emotional distress, and

e.    Loss of employment as the Chief of Police for the City of Medina for which Chief Chen requests reinstatement from the court to his former position as Chief of Police with the City of Medina.

(*Discrimination in Violation of Civil Rights under RCW 49.60.030*)

Plaintiff realleges and incorporates by reference all factual allegations contained above in the facts entitling plaintiff to relief and all allegations contained in causes of actions set forth in this Complaint as though fully stated in this cause of action.

365.    The City of Medina intentionally discriminated against and denied Chief Chen his civil rights because of his race and/or national origin.

72 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

366.    Ms. Hanson, individually and in her official capacity as City Manager, and Mr. Jordan, individually and in his capacity as City Manager, and/or other City employees and/or council members intentionally discriminated against and denied Chief Chen his civil rights because of his race and/or national origin.

367.    The acts and omissions of the City, Ms. Hanson, Mr. Jordan, and other City employees and/or council members targeted Chief Chen personally and created a hostile work environment.

368.    Ms. Hanson, Mr. Jordan, City employees, City Council Members, City policy makers, advisors and consultants are agents of the City. The City is liable for the acts and omissions of its agents.

369.    As a result of the intentional discrimination, the City, violated RCW 49.60.030.

370.    The City's discrimination arose from reckless indifference or malice.

371.    Despite knowledge of the discriminatory actions, inactions, decisions and words, no City official, sought to prevent or aid the discrimination from occurring.

372.    The City's discrimination caused Chief Chen harm.

373.    Chief Chen has suffered damages in an amount to be proven at trial as a result of the City's violation of RCW 49.60.030 including the following damages:

a.    Lost back pay, wages, and benefits in amounts to be established at trial;

b.    Lost future (front) pay, wages, and benefits in amounts to be established at trial;

c.    Out of pocket expenses, litigation costs, and attorney fees in amounts to be established at trial;

d.    Damages for harm to reputation and emotional distress, and

73 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

e.    Loss of employment as the Chief of Police for the City of Medina for which Chief Chen requests reinstatement from the court to his former position as Chief of Police with the City of Medina.

(*Civil Conspiracy*)

374.    Plaintiff realleges and incorporates by reference all factual allegations contained above in the facts entitling plaintiff to relief and all allegations contained in causes of actions set forth in this Complaint as though fully stated in this cause of action.

375.    Defendants Hanson and Jordan participated in a civil conspiracy to obtain information and construe it out of context using their authority within the City to infer, imply, and allege that Chief Chen had been deceptive when he wrote memoranda to a file in his capacity as Chief of Police.  In fact, writing memoranda in this fashion was not deceptive. Defendant Hanson and Jordan's actions had the result of causing co-workers to behave in a hostile manner toward Chief Chen in violation of RCW 42.40.050 and ultimately that hostile behavior was utilized to justify termination of Chief Chen.

376.    Defendants Hanson and Jordan participated in a civil conspiracy which caused the City to wrongfully terminate Chief Chen in violation of RCW 42.40.050.

377.    Each of the Defendants participated in a civil conspiracy in retaliation to discharge against Chief Chen in violation of RCW 42.40.010-.050.

378.    Each of the Defendants participated in a civil conspiracy to breach the City employment policy.

379.    Each of the Defendants participated in a civil conspiracy to discriminate against Chief Chen in violation of his rights.

380.    Each of the Defendants actions were substantial contributing factors and acted in agreement with mutual assent  in the wrongful discharge of Chief Chen, retaliatory

74 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  discharge of Chief Chen, breach of City employment policy, and discrimination against

2  Chief Chen.

3       381.    The Defendants are jointly and severally liable to Plaintiff.

4  (***Defamation***)

5       Plaintiff realleges and incorporates by reference all factual allegations contained

6  above in the facts entitling plaintiff to relief and all allegations contained in causes of actions

set forth in this Complaint as though fully stated in this cause of action.

7       382.    The City has caused false statements to be disseminated about Chief Chen to

8  third persons as described throughout this complaint.

9       383.    The City, Ms. Hanson, and the persons that made the statements knew or

10  should have known that the statements being made were untrue.

11       384.    The City, Ms. Hanson, and the persons that made the untrue statements made

12  them with malice.

13       385.    The untrue statements injured Chief Chen's reputation and exposed Chief

14  Chen to public hatred, contempt, ridicule, and/or degradation.

15       386.    Some, but not all, of the untrue statements are so defamatory that they

16  defamatory *per se*.

17       387.    As a direct and proximate cause of one or more of the untrue statements being

18  made to third parties Chief Chen's reputation has been harmed. Despite making significant

efforts to obtain employment, Chief Chen has repeatedly been refused and denied even

19  consideration for a position in public law enforcement and private security for which he is

20  qualified and/or over qualified. Chief Chen has been denied a significant number of jobs and

21  those where interest is shown an internet search of Chief Chen's name reveals the harm to

22  Chief Chen's reputation and undoubtedly results in a denial letter. But for the harm to his

23

24

75 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34ᵀᴴ STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

reputation he would have previously been at least initially considered for the positions he has sought.

388.    Chief Chen has suffered damages in an amount to be proven at trial as a result of the defamation including the following damages:

    a.    Lost back pay, wages, and benefits in amounts to be established at trial;

    b.    Lost future (front) pay, wages, and benefits in amounts to be established at trial;

    c.    Out of pocket expenses, litigation costs, and attorney fees in amounts to be established at trial;

    d.    Damages for harm to reputation and emotional distress, and

    e.    Loss of employment as the Chief of Police for the City of Medina for which Chief Chen requests reinstatement from the court to his former position as Chief of Police with the City of Medina.

### *(Municipal Liability, Color of Law; and Damages)*

389.    All of the above described acts and omissions of the Defendants were done under color of law of the state of Washington and within the scope of their official employment.

390.    All actions and omissions of Defendant Hanson and other managerial and supervisory personnel at the City of Medina were taken pursuant to the policies, procedures, practices and/or customs of the City of Medina and the violation of Chief Chen's rights was the proximate and foreseeable result of those policies, procedures, practices and/or customs.

391.    All actions and omissions of the City Council of the City of Medina were taken pursuant to the policies, procedures, practices and/or customs of the City of Medina and the violation of Chief Chen's rights was the proximate and foreseeable result of those

76 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

JONES LAW GROUP, P.L.L.C.
11819 NE 34ᵗʰ STREET
BELLEVUE, WA 98005
TEL. (425) 576-8899 · FAX (425) 576-9898

policies, procedures, practices and/or customs.

392.   As a direct and proximate result of the acts and omissions of Defendants, Chief Chen has suffered and will continue to suffer injury in the form of special, general, and consequential damages in an amount to be proven at trial, including, without limitation: loss of employment and career; past and future wages and benefits of employment; loss of retirement benefits and account; loss of income earning potential; stigma, humiliation and loss of reputation; emotional distress and suffering; loss of liberty and enjoyment of life; adverse tax consequences; and attorney fees and costs.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

(a)   For judgment against the City of Medina, Donna Hanson, Bret Jordan, and John and Jane Does 1-3 in favor of Plaintiff in a sum to be determined at the time of trial, arising from all damages Chief Chen has suffered or is otherwise entitled to, including but not limited to:

(i) actual damages,

(ii) general damages for but not limited to emotional distress,

(iii) special damages for but not limited to lost wages, benefits and out of pocket expenses,

(iv) double damages for lost wages and benefits pursuant to RCW 49.52.050,

(v) compensatory and punitive damages, pursuant to 42 U.S.C. § 1981a, or any other law that may authorize such damages in this case, in the maximum amount permitted by law, and

(vi) nominal damages.

77 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    (b)     For Plaintiff's litigation expenses, costs, and reasonable attorney fees incurred

2  in bringing this action under 29 U.S.C. § 794(a), 42 U.S.C. § 1988, 42 U.S.C. § 12205, RCW

3  49.60.030 and/or RCW 49.48.010-.030, and any other law that would authorize costs and

4  attorney fees in this case;

5    (c)     For reinstatement of Chief Chen to his former position as Chief of Police with

6  the City of Medina, or if reinstatement is found to be impossible, an award of future wages

7  and benefits lost in an amount to be determined at the time of trial;

8    (d)     For pre-judgment interest on lost wages and any other damages or economic

9  loss demonstrated at trial;

10    (e)     For an award of "tax consequences" in an amount to be determined that arise

11  as a result of any judgment and award entered by the court; and

12    (f)     For such other relief as the court deems just and equitable.

13    DATED this 16th day of December, 2011.

14                                         JONES LAW GROUP, P.L.L.C.

15

16                                         /s/ Marianne K. Jones_____
                                           MARIANNE K. JONES, WSBA #21034
                                           MONA K. McPHEE, WSBA # 30305
17                                         Attorneys for Plaintiff Jeffrey Chen

18                                         Jones Law Group, PLLC
                                           11819 NE 34th Street
19                                         Bellevue, WA 98005
                                           (425) 576-8899
20                                         Email: mlaw@joneslawgroup.com
                                                  mkm@joneslawgroup.com

21

22

23

24

78 – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF