UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY CHEN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF MEDINA, et al.,<br><br>　　　　　Defendants. | C11-2119 TSZ<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

THIS MATTER came on for trial on March 11, 2013.  Plaintiff was represented by Marianne K. Jones and Mona K. McPhee.  Defendants were represented by Suzanne K. Michael and Stephanie R. Alexander.  With regard to all aspects of the case other than back pay and front pay on the federal law claims, an eight-person jury was empaneled.  As to back pay and front pay on the federal law claims, the jury served in an advisory capacity.  *See* Fed. R. Civ. P. 39(c).

On March 26, 2013, the jury rendered a verdict, finding liability as to the state law claim and all three federal law claims.  The jury awarded plaintiff the following amounts:

| | |
|---|---:|
| Back Pay (Lost Wages) | $237,900 |
| Back Pay (Lost Benefits) | $47,580 |
| Front Pay | $1,650,000 |
| Emotional Harm | $100,000 |

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

The jury also awarded punitive damages on the federal law claims against defendant Donna Hanson in the amount of $25,000.  With respect to back pay and front pay on the federal law claims, the Court now enters the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1. Plaintiff's expert, Robert W. Moss, testified via perpetuation deposition that the amount of plaintiff's lost wages from the date of termination, April 27, 2011, through the time of trial, March 2013, was $206,908.  Moss based this calculation on an annual salary in 2010 of $104,000, and an anticipated two percent (2%) increase in each subsequent year, resulting in the following projected annual figures:  (i) $106,000 for 2011; (ii) $108,000 for 2012; and (iii) $110,500 for 2013.

2. With respect to lost benefits, Moss calculated lost fringe benefits at fifteen percent (15%) of the lost wages, resulting in an estimate of about $31,000.

3. According to Moss, the total amount of plaintiff's lost wages and lost benefits through March 2013 was $237,944.

4. With regard to front pay, Moss estimated that, if plaintiff did not work from the time of trial until the end of his worklife expectancy, estimated to be another 13.2 years, the present value of front pay, including wages and benefits, would total $1,650,000.  Moss also testified that the scenario of plaintiff not working again until the end of his worklife expectancy was "highly unlikely" and had "a very low probability."

5. Moss also performed calculations on the assumption that plaintiff would find employment in law enforcement or a related field within the next six months,

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2

starting at seventy percent (70%) of his prior salary and increasing faster than average over the next five years to the level he would have been earning had he remained at City of Medina. Using this model, Moss arrived at a front pay figure of $270,900. Moss described this outcome as one of the two "most probable" for plaintiff.

6. The other "most probable" outcome about which Moss testified involved plaintiff obtaining employment outside the law enforcement field, earning the same amount as a person who holds a bachelor's degree, which was estimated at $65,000 per year plus benefits. For this hypothetical, Moss derived a front pay amount of $700,675. He described this scenario as "the single highest likelihood," reflecting "a serious long-lasting impact on [plaintiff's] employment potential and ability to work in his chosen field."

**Conclusions of Law**

1. With respect to the federal law claims, both back pay and front pay are equitable remedies to be decided by the Court. *See* <u>Traxler v. Multnomah County</u>, 596 F.3d 1007, 1012 (9th Cir. 2010) (front pay is a "substitute" for or "the monetary equivalent" of the equitable remedy of reinstatement; "front pay is awarded at the court's discretion only if the court determines that reinstatement is inappropriate"); <u>Lutz v. Glendale Union High School</u>, 403 F.3d 1061, 1069 (9th Cir. 2005) ("back pay remains an equitable remedy to be awarded by the district court in its discretion," even after the Civil Rights Act of 1991); *see also* 42 U.S.C. §§ 1981a(b)(2) & 2000e-5(g). The parties agree that both back pay and front pay relating to the federal law claims in this case are for the Court to decide. Minutes (docket no. 329).

2.	A finding of unlawful discrimination requires an award of back pay unless reasons exist that, "if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975); *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 867 (9th Cir. 1980). The amount of back pay should, "so far as possible," restore "persons aggrieved by discriminatory employment practices" to "a position where they would have been were it not for the unlawful discrimination." *Sangster*, 633 F.3d at 867 (quoting *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 764 (1976)).

3.	The Court concludes that an award of back pay on the federal law claims is appropriate in this case. The amount of back pay, *i.e.*, lost wages and lost benefits, from the date of plaintiff's discharge until the time of trial, that is supported by the record is $237,944. The Court does not adopt the jury's figure of $285,480, which is inconsistent with the testimony of plaintiff's expert and could only result from double counting of the estimated lost benefits.

4.	The Court concludes that prejudgment interest on the back pay award is not appropriate. Under the doctrine of sovereign immunity, the State of Washington, its political subdivisions, and municipalities are not liable for interest on their obligations absent an express waiver by legislation or contract. *Union Elevator & Warehouse Co. v. Dep't of Transp.*, 171 Wn.2d 54, 59, 248 P.3d 83 (2011); *Foster v. Dep't of Transp., Div. of Wash. State Ferries*, 128 Wn. App. 275, 115 P.3d 1029 (2005). Under RCW 4.56.115, municipalities and other governmental entities can be held liable for post-judgment

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4

1  interest, but not for prejudgment interest.  *Teevin v. Wyatt*, 75 Wn. App. 110, 114-15, 876

2  P.2d 944 (1994); *cf. State v. Thiessen*, 88 Wn. App. 827, 946 P.2d 1207 (1997) (limiting

3  the scope of the immunity waivers set forth in RCW 4.56.110(3)(a) and RCW 4.56.115 to

4  preclude interest on attorney's fees and costs).  In seeking prejudgment interest, plaintiff

5  relies solely on RCW 4.56.110 and RCW 4.56.115, which address only post-judgment

6  interest, and plaintiff has not identified any basis for holding that City of Medina has

7  waived its sovereign immunity as to prejudgment interest.[1]

     5.     City of Medina's immunity from prejudgment interest extends to defendant Donna Hanson.  *Teevin*, 75 Wn. App. at 116-17.  Pursuant to Medina Municipal Code §§ 2.76.020, .030, & .060, City of Medina is obligated to pay the judgment entered against Donna Hanson, except as to the award of punitive damages, which is not subject to prejudgment interest.  As a result, the Court concludes that the judgment against Donna Hanson may not include prejudgment interest.[2]

---

[1] Plaintiff cites *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 935 P.2d 555 (1997), for the proposition that prejudgment interest constitutes actual damages as to which sovereign immunity may not be claimed.  In *Sintra*, however, the Washington Supreme Court stated to the contrary, observing that "the interest awarded is not prejudgment interest." *Id.* at 657.  In a subsequent case, in distinguishing *Sintra*, the Washington Supreme Court explained that "the interest awarded for temporary regulatory takings was not prejudgment interest" and "was not interest in the traditional sense," but rather "part of the constitutional just compensation required to put the property owner in the same position he or she would have been had the taking not occurred." *Union Elevator*, 171 Wn.2d at 64.  Plaintiff's reliance on *Sintra* is misplaced.

[2] Even if the Court were to award prejudgment interest, the amount would be nominal.  The rate of prejudgment interest is the same as the rate set forth in 28 U.S.C. § 1961 for post-judgment interest, unless the Court finds, "on substantial evidence, that the equities of the particular case require a different rate." *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986).  The Court is satisfied that the equities of this case do not warrant a different rate for prejudgment interest.  In calculating prejudgment interest, the proper method is to divide the amount of back pay *pro rata* over the period from the date of discharge to the date of judgment, and then apply the rate specified in § 1961, compounded annually.  *See Reed v. Mineta*, 438 F.3d 1063 (10th Cir. 2006); *Robinson v. Instructional Sys., Inc.*, 80 F. Supp. 2d 203, 208 (S.D.N.Y. 2000); *see also Nelson v. EG&G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1392 (9th

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 5

6. Plaintiff having withdrawn his prayer for reinstatement, see Pla. Brief at 4 (docket no. 332), and defendants being opposed to reinstatement, see Def. Brief (docket no. 333), the Court concludes that front pay in lieu of reinstatement is an appropriate remedy in this case. See Gotthardt v. Nat'l R.R. Passenger Corp., 191 F.3d 1148, 1156 (9th Cir. 1999) ("Although reinstatement, when it is feasible, is 'the preferred remedy' in a discrimination suit, '[a]wards of front pay are appropriate when it is impossible to reinstate the plaintiff.'").

7. "A claimant's work and life expectancy are pertinent factors in calculating front pay. . . . The purpose of front pay . . . is to ensure that a person who has been discriminated against . . . is made whole, not to guarantee every claimant who cannot mitigate damages by finding comparable work an annuity to age 70." Gotthardt, 191 F.3d at 1157 (quoting Anastasio v. Schering Corp., 838 F.2d 701, 709 (3d Cir. 1988)).

8. The Court concludes that the amount of front pay on the federal law claims that is supported by the record is $270,900. The Court does not adopt the jury's figure of $1,650,000, which plaintiff's own expert described as "highly unlikely" and having "a very low probability." The Court is persuaded that the assumption underlying the jury's calculation, namely that plaintiff will never work again, bears no relationship to the evidence in this case. Given the jury's verdict, holding defendants liable for discrimination on the basis of race and/or national origin and for violation of plaintiff's substantive due process rights, the Court concludes that plaintiff will not face the same

---

Cir. 1994). Using this approach yields interest of $135.53 in 2011, $346.59 in 2012, and $106.10 in 2013, for a total of $588.22.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6

difficulty obtaining employment in the law enforcement field as he experienced before trial and prior to the verdict vindicating him.  The Court therefore discounts plaintiff's expert's testimony that plaintiff is likely to remain underemployed until the age of 65, earning only the same amount as a person with a bachelor's degree.  Plaintiff's expert characterized, and the Court finds, as "most probable" the scenario in which plaintiff secures employment in the law enforcement arena within six months and regains his previous level of compensation within five years.  The Court is satisfied that its front pay award for the federal law claims is supported by the evidence and fulfills the goal of making plaintiff whole.

9. Consistent with the Court's instruction to the jury indicating that the Court "will correct for any duplication of damages," Instruction No. 16E (docket no. 321 at 32), plaintiff is entitled to judgment in the highest amounts of back pay, front pay, and damages for emotional harm awarded with respect to his various state and federal law claims.

10. Accordingly, the Court will enter judgment in favor of plaintiff Jeffrey Chen and against defendants City of Medina and Donna Hanson, jointly and severally, as follows:  back pay in the amount of $237,944,[3] front pay in the amount of $1,650,000, and damages for emotional harm in the amount of $100,000, for a total of $1,987,944,

---

[3] Plaintiff having conceded that the jury's calculation of back pay on his claim under the Washington Law Against Discrimination ("WLAD") is inconsistent with the evidence, the Court sua sponte remits the amount of back pay on plaintiff's WLAD claim from $285,480 to $237,944.  Plaintiff's request to adjust the jury's award by using as an estimate for the value of lost benefits that is twenty percent (20%) rather than fifteen percent (15%) of lost wages is denied as unsupported by the testimony of plaintiff's expert.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 7

and in favor of plaintiff Jeffrey Chen and against defendant Donna Hanson in the additional amount of $25,000 in punitive damages, together with costs to be taxed by the Clerk in the manner set forth in Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54(d), and interest at the rate set forth in 28 U.S.C. § 1961 from the date of judgment until paid in full.

11. The Court declines to decide at this time whether an additional amount should be awarded to plaintiff to counteract the tax consequences of back pay and front pay, which will likely be received as a lump sum. The parties shall address this issue in their briefs concerning post-trial motions as follows:  (a) whether City of Medina and Donna Hanson are immune from any tax "gross-up"; *see* *Teevin v. Wyatt*, 75 Wn. App. 110, 876 P.2d 944 (1994); *see also* *Arneson v. Callahan*, 128 F.3d 1243 (8th Cir. 1997); (b) whether a tax "gross-up" would constitute an additur prohibited by the Seventh Amendment of the United States Constitution; *see* *Kelley v. City of Albuquerque*, 2006 WL 1304954 (D.N.M. Mar. 31, 2006); (c) whether the parties agreed in advance of trial that the Court, and not the jury, would decide the tax "gross-up" issue and, if so, whether such agreement waived any rights under the Seventh Amendment; (d) if defendants are not immune and a tax "gross-up" does not violate the Seventh Amendment, whether awarding a tax "gross-up" is mandatory or discretionary under state and/or federal law; and (e) if discretionary, whether the Court should exercise its discretion to award a tax "gross-up."

12. Any Conclusion of Law denominated as a Finding of Fact shall be deemed a Conclusion of Law and any Finding of Fact denominated as a Conclusion of Law shall be deemed a Finding of Fact.

IT IS SO ORDERED.

Dated this 8th day of April, 2013.

*[signature: Thomas S. Zilly]*

THOMAS S. ZILLY
United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 9