Hon. Thomas S. Zilly

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY CHEN, individually,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MEDINA, a public agency and Washington noncharter code city; DONNA HANSON, in her official and individual capacities; BRET JORDAN, in his official and individual capacities,<br><br>Defendants. | Case No. 11-cv-02119-TSZ<br><br>CHIEF CHEN'S MOTION TO RECUSE OR DISQUALIFY JUDGE ZILLY<br><br>**Note on Motion Calendar: 11/22/2013**<br><br>**ORAL ARGUMENT REQUESTED** |

## I. RELIEF REQUESTED

Pursuant to 28 U.S.C. § 455 and § 144, Plaintiff moves the court to recuse or disqualify himself as the trial judge in the second trial in this matter.

## II. STATEMENT OF FACTS

On March 28, 2013, an eight person jury unanimously decided in favor of Plaintiff Chief Chen. Following that ruling the court met with the jury and had the opportunity to hear from and speak to them. The contents of that conversation is unknown except for what the

PAGE 1 – MOTION TO RECUSE

court shared with counsel in open court following the verdict. On August 23, 2013 the court issued a ruling on Defendants Motion for a new trial (Dkt. 409). In that ruling the court made factual findings and decisions and placed those finding and decisions in a court order.

Some of the decisions made in this case involve factual issues for the jury to decide such as the veracity of a witness and the ultimate question as to whether the Plaintiff was terminated based upon his race or national origin. Those decisions include:

Plaintiff's evidence of discrimination is virtually nonexistent. (pg.4)

The more reasonable explanation is that Hanson never announced any ultimatum, and that plaintiff voluntarily quit and then decided to return. (pg. 18)

Nothing in plaintiff's recounting of the events of December 17, 2010, supports a finding that plaintiff's allegedly compelled resignation resulted from discrimination on the basis of race or national origin. (pg. 18)

Plaintiff's case rests primarily on two statements ascribed to Hanson, one of which is disputed, and neither of which are proximate in time to plaintiff's resignation, placement on administrative leave, or termination. (pg.19)

Even assuming such extrapolation was warranted, the underlying evidence does not demonstrate an animus based on race or national origin or provide any basis for liability on plaintiff's discrimination claims. (pg.20)

Although Hanson was not a strong witness, the Court has no reason to doubt her veracity. In contrast, plaintiff's pre-suit writings raise serious concerns about his credibility. (pg. 21)

Plaintiff still failed to link the statements to Hanson, offering no basis to believe that Hanson was aware of Yourkoski's behavior or had condoned it. (pg. 24)

Plaintiff's criticism is frivolous. (pg. 28)

PAGE 2 – MOTION TO RECUSE

Hanson cannot be at fault for not telling Bolasina about something, namely a directive to "proceed with a criminal trespass charge," that no evidence in the record establishes occurred. (pg. 29)

The Court, however, acknowledges that a jury could assess the credibility of the witnesses and weigh the evidence differently than the Court, and the Court has therefore previously denied defendants' motion for judgment as a matter of law. In granting a new trial, the Court does not prejudge whether another jury will reach a similar or different verdict; however, the Court will more rigorously patrol plaintiff's counsel's conduct to prevent her from infusing into a second trial the various contaminates that make upholding the first verdict impossible. (pgs.30-31)

This fact belies any motive on Bolasina's part to fabricate, exaggerate, or embellish events…..The great weight of the evidence supports a finding that plaintiff made false statements to Bolasina. (pg. 32)

The jury might have been persuaded by plaintiff's counsel inappropriate statement at the beginning of her rebuttal indicating that "[a] case doesn't get to federal court unless a case exists," Tr. (Mar. 25, 2013) at 62:22-23, or by some other appeal to passion or prejudice, but regardless of what improperly swayed the jury, its verdict bears no correlation to the great weight of the evidence, and the Court concludes that defendants are entitled to a new trial at least with regard to their strong "same decision" defense. (pg. 35-6)

The discriminatory remarks Jones paraded before the jury during her opening statement and about which she elicited testimony from plaintiff and his experts during trial…..(pg. 43)

PAGE 3 – MOTION TO RECUSE

# III. ARGUMENT

**A. This Court Should Recuse himself because of bias.**

28 U.S.C. § 455. It provides, in pertinent part, as follows:

> § 455. Disqualification of justice, judge or magistrate judge
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party….
> ;

Section § 144 of Title 28 states in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Section 455(a) requires disqualification for the *appearance* of partiality (i.e., when a judge's "impartiality might reasonably be questioned") as compared to § 455(b)(1), which requires disqualification for *actual* partiality (i.e., when a judge "has a personal bias or prejudice toward a party"). Whether the judge is, in fact, impartial is determinative of disqualification under § (b)(1). The justification for making perceived partiality a grounds for disqualification is at least twofold. First, regardless of whether judges are partial in fact, public perceptions of partiality can undermine confidence in the courts. Second, disqualifying judges for outward manifestations of what could reasonably be construed as bias obviates making subjective judgment calls about what is actually going on inside a

PAGE 4 – MOTION TO RECUSE

judge's heart and mind.  A judge contemplating disqualification under § 455(a), then, should not ask whether he or she believes he or she is capable of impartially presiding over the case. Rather, the question is whether a judge's impartiality might be questioned from the perspective of a reasonable person, and every circuit has adopted some version of the "reasonable person" standard to answer this question. *See, e.g.*, *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998), *cert. denied*, 119 S. Ct. 1793 (1999); *In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998); *Baldwin Hardware Corp. v. Franksu Enter. Corp.*, 78 F.3d 550, 557 (Fed. Cir. 1996); *Blanche Rd. Corp. v. Bensalem Twp.*, 57 F.3d 253, 266 (3d Cir. 1995); *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992); *Vieux Carre Prop. Owners v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991); *In re Barry*, 946 F.2d 913, 914 (D.C. Cir. 1991); United States v. Nelson, 922 F.2d 311, 319 (6th Cir. 1990); Little *Rock Sch. Dist. v. Arkansas*, 902 F.2d 1289, 1290 (8th Cir. 1990); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988); *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987); *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986); *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981).

In *United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993), the Tenth Circuit reversed a refusal to disqualify where the defendants were abortion protesters and the trial judge had appeared on national television and stated that "these people are breaking the law."(Id. at 990.) The court of appeals stated:

> Two messages were conveyed by the judge's appearance on national television in the midst of these events. One message consisted of the words actually spoken. . . . The other was the judge's expressive conduct in deliberately making the choice to appear in such a forum at a sensitive time to deliver strong

PAGE 5 – MOTION TO RECUSE

> views on matters which were likely to be ongoing before him.
> Together, these messages unmistakably conveyed an
> uncommon interest and degree of personal involvement in the
> subject matter. It was an unusual thing for a judge to do, and it
> unavoidably created the appearance that the judge had become
> an active participant in bringing law and order to bear on the
> protesters, rather than remaining as a detached adjudicator. (Id.
> at 995)

In *In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001), the First Circuit held that a judge's comments to the media about a pending case challenging an elementary school student-assignment process on grounds of racial discrimination required disqualification. Seeking to correct misinterpretations in press accounts unfavorably comparing her action in the pending matter with a previous case, the judge had told a newspaper reporter in a phone interview, the content of which was later published, that the pending case was "more complex." *Id.* at 166. The plaintiffs subsequently moved for disqualification, and the judge denied the motion. The First Circuit held that disqualification was necessary and granted the petitioners' writ of mandamus pursuant to § 455(a). Although it found the media contact "less inflammatory than that in *Cooley*," it saw "the same factors at work." *Id.* at 169. First, because the school assignment program was a matter of significant local concern, the public attention and rarity of such public statements by a judge made it "more likely that a reasonable person [would] interpret such statements as evidence of bias." *Id.* at 170. Second, like *Cooley*, the "'appearance of partiality' at issue here . . . stems from the real possibility that a judge's statements may be misinterpreted because of the ambiguity of those statements." *Id*. Finally, a judge's defense of her own orders, before the resolution of appeal, could also create the appearance of partiality. *Id*. The court noted that its holding was "based

PAGE 6 – MOTION TO RECUSE

on the particular events" of a "highly idiosyncratic case." *Boston's Children First*, 244 F.3d 164, 171. (1st Cir. 2001).

Similarly, in *Hathcock v. Navistar International Transportation Corp.*, the Fourth Circuit reversed a refusal to disqualify where, while a jury trial was pending against an automobile company, the judge, while at an auto torts seminar, gave a speech that expressed hostility toward defendants and defense counsel in such cases. *Hathcock v. Navistar Transportation Corp.*, 53 F.3d 36, 41 (4th Cir. 1995).

Here, the court made statements in the August 23, 2013 order which were extraneous for the ruling and reflect bias under any reasonable person standard. The statement, "Plaintiff's evidence of discrimination is virtually nonexistent, (pg.4)" and "Plaintiff's criticism is frivolous." (pg. 28) both show the court's bias and determination that there is no discrimination which is the ultimate question for the jury. Any reasonable person would believe that this court will strive to keep out evidence of the City of Medina and Ms. Hanson's discrimination toward Chief Chen because the court has already made up his mind that it is virtually non-existent. In contrast, evidence of discrimination was complained to Ms. Hanson in Exhibit 95, this evidence includes the statement "I don't talk to Orientals." This was admitted in court without objection in Exhibit 95. The jury asked if they could rely on Exhibit 95 and the court answered yes. The issue was raised in oral argument and the exhibit was provided to the court. Yet the court completely disregarded this evidence in asserting what evidence of discrimination existed in the case. This shows bias that the court is not looking at all the evidence or citing the evidence and making broad conclusions, which are hostile, in the comment "virtually nonexistent." Also, commenting that Plaintiff's criticism is frivolous, is derogatory and degrading to Plaintiff.

PAGE 7 – MOTION TO RECUSE

A reasonable person would also construe comments on the evidence such as, "The more reasonable explanation is that Hanson never announced any ultimatum, and that plaintiff voluntarily quit and then decided to return," (pg. 18) to show bias in that the court's mind is already made up. There is no "do-over" the court has made factual decisions and even opposing counsel interprets that as an opportunity to have certain evidence decided prior to the second trial. Whether Hanson's or Chief Chen's explanation was more reasonable is a question for the jury, not for the court. The court could have made its ruling without such decisions on the evidence being stated.

Another example of bias is in how the court interprets where the link between discrimination and the adverse employment action must exist for discrimination to occur. The court said, "Nothing in plaintiff's recounting of the events of December 17, 2010, supports a finding that plaintiff's allegedly compelled resignation resulted from discrimination on the basis of race or national origin" (pg. 18) and "Plaintiff's case rests primarily on two statements ascribed to Hanson, one of which is disputed, and neither of which are proximate in time to plaintiff's resignation, placement on administrative leave, or termination." (pg.19)

As if the discrimination had to occur on December 17, 2010 in order for discrimination to be a basis for the adverse employment action. Plaintiff's recounting of the December 17, 2010 events was intended to be a culmination of 10 years of employment at the City of Medina with interspersed discrimination existing from beginning to end. However, the bias by this court shows a contrary assertion from the law as if there had to be some words or specific discrimination on December 17, 2010. This is not the law and to make such a statement reflects bias in favor specifically of Ms. Hanson. This impartiality in favor of Ms Hanson is specifically evidenced in the court's own words, "Although Hanson

PAGE 8 – MOTION TO RECUSE

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
(425) 576-8899

was not a strong witness, the Court has no reason to doubt her veracity. In contrast, plaintiff's pre-suit writings raise serious concerns about his credibility." (pg. 21)

The court had unequivocally decided on the evidence and what proper determinations should have been made as to the evidence by stating, "Even assuming such extrapolation was warranted, the underlying evidence does not demonstrate an animus based on race or national origin or provide any basis for liability on plaintiff's discrimination claims." (pg.20) This is not for the court to decide, this is for the jury to decide. The jury is to determine whether the City of Medina and/or Ms. Hanson's actions demonstrated racial animus under the law. To have made such a determination in the order, any reasonable person would determine that the court is impartial and biased.

The court has shown its bias in recognizing some evidence and ignoring other evidence in its order, "Hanson cannot be at fault for not telling Bolasina about something, namely a directive to "proceed with a criminal trespass charge," that no evidence in the record establishes occurred." (pg. 29) This proves bias because Yourkoski testified that he did what Ms. Hanson told him to do and William Marik testified that Yourkoski called back within an hour with the decision of the City and the Mr. Bolasina testified that on the same day, he, Ms. Hanson and Lt. Yourkoski had a conversation for approximately one hour. Disregarding this evidence and simply concluding that Hanson did not tell Bolasina is contrary to all the evidence and it selectively relies upon only certain evidence in the record and not the entire record. A reasonable person would view that statement as proving bias from the court. Even more compelling is then the court's favoritism of Mr. Bolasina, "This fact belies any motive on Bolasina's part to fabricate, exaggerate, or embellish events…..The great weight of the evidence supports a finding that plaintiff made false statements to Bolasina." (pg. 32) The court finds no motive on Bolasina's part because the court also

PAGE 9 – MOTION TO RECUSE

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA 98005
(425) 576-8899

believes that Ms. Hanson was not discriminatory, the court has made up its mind and there is no possibility that Chief Chen can obtain a fair and impartial trial with a court that has published its decisions publicly and vehemently.

While the court does attempt to balance this argument with the statement, "The Court, however, acknowledges that a jury could assess the credibility of the witnesses and weigh the evidence differently than the Court, and the Court has therefore previously denied defendants' motion for judgment as a matter of law. In granting a new trial, the Court does not prejudge whether another jury will reach a similar or different verdict; however, the Court will more rigorously patrol plaintiff's counsel's conduct to prevent her from infusing into a second trial the various contaminates that make upholding the first verdict impossible." (pgs.30-31) It is simply a statement that promises to limit the evidence Chief Chen can produce to that which the court has determined is proper based upon this courts determination of veracity of witnesses, inferences to be drawn, and what discrimination looks like and what it does not. These are all questions for the jury. The court has so intermingled the questions for the jury and the decisions of the court in its August 23, 2013 ruling, that no reasonable person could believe that this judge could or would be unbiased, and impartial at a second trial.

Finally, the evidence of hostility towards Plaintiff's counsel is extreme, "The jury might have been persuaded by plaintiff's counsel inappropriate statement at the beginning of her rebuttal indicating that "[a] case doesn't get to federal court unless a case exists," Tr. (Mar. 25, 2013) at 62:22-23, or by some other appeal to passion or prejudice, but regardless of what improperly swayed the jury, its verdict bears no correlation to the great weight of the evidence, and the Court concludes that defendants are entitled to a new trial at least with regard to their strong "same decision" defense," (pg. 35-6) and "The discriminatory remarks

PAGE 10 – MOTION TO RECUSE

Jones paraded before the jury during her opening statement and about which she elicited testimony from plaintiff and his experts during trial….."(pg. 43) Saying common sense knowledge is inappropriate to be stated to a jury, such that they could infer if the court allowed this case to go forward, a *prima facia* case must exist, but saying it in layman's terms, is not inappropriate. If it was, the court should have said something at anytime. Then referring to Plaintiff's counsel as "parading" when at all times counsel was behind a podium, shows distinct hostility. A reasonable person would conclude that this court has hostility and even vengeance for plaintiff's counsel given these public words.

The public has recognized it the bias. The newspaper articles show that it is firmly believed at least by some in the Asian community that Chief Chen cannot now obtain a fair trial with this same judge. See Ex. 1 to Declaration of J. Chen. Clearly there are persons who came to this conclusion themselves. Both Chief Chen and Doug Chinn came to the conclusion independently that there will be no justice for Chief Chen because of the bias and predeterminations by the judge for the second trial.

IV. CONCLUSION

Discrimination regarding the police chief is a matter of significant local concern in the community. The court's decision of August 23, 2013 was publically discussed in the media. The public attention and rarity of such public statements by a judge made it "more likely that a reasonable person [would] interpret such statements as evidence of bias here in Chen as it was in *Cooley*. Moreover, the element of hostility has also been evidenced by the court's words. It is reasonable to believe that persons will believe there is bias and impartiality such that Chief Chen cannot obtain a fair unbiased judge in the next trial. This court should recuse itself.

PAGE 11 – MOTION TO RECUSE

DATED this 31st day of October, 2013.

JONES LAW GROUP, P.L.L.C.

/s/ Marianne K. Jones
MARIANNE K. JONES, WSBA No. 21034
Attorney for the Plaintiff

PAGE 12 – MOTION TO RECUSE