**Hon. John C. Coughenour**

IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHIGTON

| | |
|---|---|
| JEFFREY CHEN, individually,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MEDINA, a public agency and Washington noncharter code city; DONNA HANSON, in her official and individual capacities; BRET JORDAN, in his official and individual capacities,<br><br>Defendants. | Case No.  11-cv-02119-JCC<br><br>MOTION FOR A NEW TRIAL<br><br><br>NOTE ON MOTION CALENDAR:<br><br>October 10, 2014<br><br>**Oral Argument Requested** |

## I.   Identity of Moving Party and Relief Requested

Plaintiff Jeffrey Chen asks this Court to grant a new trial, under Federal Rule 59, based on Defendant City of Medina's misconduct, and on this Court's erroneous ruling that Chen opened the door to SPD testimony.

## II.   Facts Relevant to Motion

At issue here is the City's misconduct – its failure to timely produce four hard drives and a thumb drive that were responsive to numerous discovery requests,

PAGE 1- MOTION FOR NEW TRIAL

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA  98005
(425) 576-8899

withholding these drives until this Court ordered production nearing the end of trial. Chen's discovery defines "[d]ocument" as including "digital media, . . . magnetic tape, magnetic discs, magnetic strips, electronically stored item, . . . email . . . computer files, . . . data compilations from which information can be obtained or translated through detection devices into reasonably usable form, or any other tangible thing which constitutes or contains matters contained within the scope of CR 26(b)."  Ex A to Dec. of Macario, Dkt. No. 105-1, p. 5.  Documents as defined includes hard drives. Declaration of Bill Gallivan at ¶ 5.

In his First Set of Interrogatories and Requests for Production propounded on March 21, 2012, Chen asked the City to "identify all *documents* that support" each of the City's many affirmative defenses, and to produce all records "that support or relate to" the interrogatory answer as to each affirmative defense.  Ex A to Dec. of Macario, Dkt. No. 105-1, pp.10-30 (emphasis added).   For example, Chen's Interrogatory 4 asked the City to identify all "documents that support paragraph 5 of [it's] affirmative defenses."  *Id*. at p. 15.  Chen's Interrogatory 7 also asked for any "documents" related to the City's "overriding justification" defense.  *Id*. at p.19; Answer, Dkt. No. 13, p. 29.   The hard drives and the data they contained were also responsive to many of Chen's Requests for Production, including for example Chen's Second Request for Production 20, seeking all documents created by or for, or received by Donna Hanson, relating to Chen in the relevant timeframe; and Chen's Second Request for Production 21, seeking all documents created by or for, or received by Dan Yourkoski, relating to Chen in the relevant timeframe.  Dec. of Jones, Dkt. No. 81-3, p. 16.  In short, there is

PAGE 2- MOTION FOR NEW TRIAL

no doubt that Chen repeatedly propounded discovery that should have produced the non-disclosed drives.

During Chen's August 13, 2014, direct examination of Nathan Way, Way disclosed for the first time that the City had possession of a hard drive removed from Chen's computer after his resignation.  Unofficial 8/13 RP 128, 140-41.[1]  Way testified that he made a copy of Chen's "hard disc," replaced the hard disc in Chen's computer, and gave the copy and the hard drive directly to City Clerk Rachel Baker to store in her safe.[2] *Id*. at 141.

The next day, Chen filed a motion for sanctions, spelling out the City's obvious discovery violations.  Motion for Sanctions, Dkt No. 508, p.1-2.   The City filed no written response.  On August 15, this Court ordered the City to turn over the hard drive, and to produce "login reports," if the City had them.  8/15 RP 63.  The City then produced four hard drives for the first time.  8/19 RP 2; Gallivan Dec. at 5.  Days later on August 19, the City produced a thumb drive.  8/19 RP 2.

Chen moved for a mistrial on August 19.  *Id*. at 1.  This Court denied Chen's motion, despite noting the temptation to grant a mistrial.  *Id*. at 4.  Chen later filed a supplemental sanctions motion, which this Court summarily denied.  Supplemental Motion, Dkt No. 522, p.1; 8/20 RP 1; Minute Entry, Dkt No. 524.

---

[1] All references to the transcript are "unofficial" as the transcript has not yet been edited by the court reporter.

[2] Way testified similarly in the first trial, stating that he copied Chen's hard drive and gave it to Baker, but omitting that he had removed the drive.  3/21 RP 206.  Counsel did not pursue the issue.  The jury returned a verdict over $2 million.  Verdict, Dkt. No. 325, pp. 4-6.

PAGE 3- MOTION FOR NEW TRIAL

1   Chen gave these drives to Dan Gallivan, the Chief Technology Officer for

2   Gallivan Gallivan & O'Melia (GGO), a Forensics and e-discovery compliance firm.

3   Gallivan Dec. at ¶ 2.  Before turning them over, the City had the hard drives preserved

4   by Stroz Friedberg, an internationally recognized computer forensic and investigation

5   firm.  *Id*. at ¶ 6.  GGO conducted forensics on the four late-produced hard drives and

6   the thumb drive.  *Id*. at ¶ 9.  Chen did not have any information on these drives, so

7   could not tell GGO anything that would facilitate forensics.  *Id*. at ¶ 8.

8   Drives 2 and 3 are part of a larger computer array, so in the form provided, no

9   conclusions can be drawn about the activity or data on those drives.  *Id*. at ¶¶ 9, 10.

10  Drive 1 shows general usage by 25 users, and includes a JChen profile.  *Id*. at ¶¶ 9, 13.

11  Drive 4 has only one profile – JChen – and is the most consistent with a single-user

12  desktop configuration.  *Id*. at ¶ 13.

13  There is no evidence of "wiping" on any of the four hard drives:

14  None of the four drives have any indication of deletions or file wiping from 16
    November 2010 through 9 Feb 2011.

15

16  *Id*. at ¶ 12.  All drives have positive indications that no wiping took place.  *Id*. at ¶¶ 11,

17  12, 13, 17, 22.

18  The City's Nathan Way and Matt Cruz testified that Cruz "recovered" Chen's

19  "deleted" Outlook emails and that Way then copied and removed Chen's hard drive,

20  with the "deleted" Outlook emails "recovered."  RP 8/13 RP 139-41; 8/18 127-28.  If

21  Outlook emails had been deleted and recovered on the two user drives (1 & 4), in the

22  manner Way and Cruz explained, then there would be a forensic artifact left behind.

23  Gallivan Dec. at ¶ 15.  Drives 1 and 4 show no indication that email boxes in Chen's

24

25  PAGE 4- MOTION FOR NEW TRIAL

1  user profile were deleted, and show no indication of email recovery having been

2  performed, contrary to the Way/Cruz testimony.  *Id*. at ¶¶ 15, 16.

3      Finally, it is impossible to determine whether the City has produced the drive

4  Way removed from Chen's computer.  *Id*. at ¶¶ 8, 16.  This is in part because none of

5  the four drives are consistent with the Way/Cruz testimony.  *Id*. at ¶¶ 14-16.  There

6  also is no profile for Way or Cruz on any drive, indicating either that they accessed the

7  drives exclusively through another user, or did not access them at all.  *Id*. at ¶ 14.

8  Without the chain of evidence, there is no way to determine which, if any, of these

9  drives originated in Chen's computer.  *Id*. at ¶¶ 8, 16.

**III. Authority and Argument**

11     Following a jury trial, a court may grant a new trial under Federal Rule 59 "for

12  any reason for which a new trial has heretofore been granted in an action at law in

13  federal court."  FRCP 59(a)(1)(A).  Rule 59 does not specify the grounds upon which

14  a new trial motion may be granted.  ***Molski v. M.J. Cable, Inc.***, 481 F.3d 724, 728-30

15  (9th Cir. 2007).  Instead, motions must be based on "[h]istorically recognized

16  grounds," including, but not limited to, "claims 'that the verdict is against the weight

17  of the evidence, that the damages are excessive, or that, for other reasons, the trial was

18  not fair to the party moving.'"  ***Molski***, 481 F.3d 729 (quoting ***Montgomery Ward &***

19  ***Co. v. Duncan***, 311 U.S. 243, 251, 61 S. Ct. 189, 85 L.Ed. 147 (1940)).  A new trial

20  should be granted to prevent a miscarriage of justice.  ***Molski***, 481 F.3d at 729.

21     When a party seeks a new trial under Rule 59 based on discovery misconduct,

22  this Court applies the same standards for a new trial brought under Rule 60(b)(3).

23  ***Jones v. Aero/Chem Corp.***, 921 F.2d 875, 878 (9th Cir. 1990).  Under Rule 60(b)(3),

PAGE 5- MOTION FOR NEW TRIAL

the moving party must, "(1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct[; and] (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting his case or defense." *Jones*, 921 F.2d at 878-79 (quoting *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982) (citation omitted)). Where information is wrongfully withheld during discovery, the moving party need not prove that the improperly withheld information would have changed the outcome of the case:

> Although when the case involves the withholding of information called for by discovery, the party need not establish that the result in the case would be altered.

*Jones*, 921 F.2d at 879 (quoting *Bunch*, 680 F.2d at 1283).

Failing to produce materials sought in discovery can constitute "misconduct" within the meaning of Rule 60(b)(3). *Jones*, 921 F.2d at 879 (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988) (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978)). "Misconduct" does not require a purposeful act, and includes "accidental omissions"

> "Misconduct" does not demand proof of nefarious intent or purpose as a prerequisite to redress. . . . The term can cover even accidental omissions - elsewise it would be pleonastic, because "fraud" and "misrepresentation" would likely subsume it. . . . Accidents -- at least avoidable ones -- should not be immune from the reach of the rule.

*Jones*, 921 F.2d at 879 (quoting *Anderson*, 862 F.2d at 923). In *Anderson*, for example, the court found misconduct where plaintiff exercised due diligence in discovery, the defendant knew, or was charged with knowing about the non-disclosed

PAGE 6- MOTION FOR NEW TRIAL

document, and the defendant did not divulge the document's existence.  862 F.2d at 928.

**A.      The City failed to produce four hard drives and a thumb drive responsive to Chen's discovery requests, which is plainly misconduct.**

The City's failure to timely produce the responsive drives is misconduct, or worse.  *Jones*, 921 F.2d at 879.  Chen exercised due diligence in requesting hard drives – much of his discovery covered them.  The City knew it had these drives – when ordered to turn over the drive Way testified to, the City quickly responded "We can certainly do that."  8/15 RP 63.  The City did not disclose the drives through the entire first trial, or most of the second, waiting until this Court ordered production.  The City's intentions are irrelevant – this is at best an easily avoidable accident – so is misconduct.  *Jones*, 921 F.2d at 879.

Worse, however, is that the City was not just withholding the one drive Way mentioned, but five.  Even worse, is that Chen still may not have the drive that originated in his computer, as none of the drives produced are consistent with the Way/Cruz testimony.  Gallivan Dec. at ¶¶ 14-16.  In short, the City not only failed to produce at least 5 drives, but still may not have complied with this Court's order to produce the drive Way testified about.  *Id*. at ¶¶ 8, 16.

**B.      The City's misconduct prevented Chen from fully and fairly presenting his case.**

> **1.      *The non-disclosed hard drives prove that Chen did not wipe his hard drive, contrary to the City's assertions.***

Crucial to the City's case was the investigation conducted by attorney Ellen Lenhart, whom the City hired to investigate issues arising after Chen resigned.  8/20 RP 82, 85-86.  Lenhart opined that Chen was dishonest about events surrounding his

PAGE 7- MOTION FOR NEW TRIAL

forced resignation and that Hanson's version of events was more credible.  Ex 1074 at 6, 14; 8/20 RP 96.  In the first trial, Judge Zilly ordered a new trial based in large part on Lenhart's report that Chen was dishonest.  Order Granting New Trial, Dkt. No. 409, pp. 32-33.

Lenhart testified that Chen's "computer . . . had been wiped clean," and had "no remaining files."  8/20 RP 97.  Lenhart's investigation report also states her belief that Chen's "computer" had been "wiped clean," citing this as her first basis for disbelieving Chen's version of events surrounding his forced resignation.  Ex 1074 at 9.  Assuming arguendo that one of the drives the City produced was Chen's, then Lenhart was wrong – all four drives show positive indications that no wiping occurred.  Gallivan Dec. at ¶ 12.

Again – assuming the City has produced Chen's drive, then its late production prevented Chen from conclusively proving that Chen did not wipe his computer, contrary to the principal consideration supporting Lenhart's investigation report.  *Id*.; Ex 1074 at 9.  With that information, Chen would have been able to show that the City knew that Chen had not wiped his computer, where the City had possession of Chen's hard drive, which showed no indication of wiping.  Gallivan Dec. at 12; 8/13 RP 141.

Chen could have called Lenhart's investigation into question, and sought discovery regarding how and by whom Lenhart was falsely led to believe that Chen had wiped his computer.  Chen could have shown that the City could not reasonably rely on Lenhart's investigation report, and may have taken steps to prejudice Lenhart with false or misleading information.  But again, Chen still may not have his drive.

PAGE 8- MOTION FOR NEW TRIAL

**2.      *The non-disclosed thumb drive contains emails sent to Chen when his office door was opened, corroborating Chen's version of events surrounding his forced termination.***

Near the end of trial, Chen discovered on the previously non-disclosed thumb drive, a folder called "jeffchenemails."  Supplemental Motion, Dkt. No. 522, p.4.  This folder contained emails sent to Chen's Outlook account every time his office door was opened, a feature of the SecureFocus security system in place at the Department's temporary location at City Hall.  *Id.*  These emails corroborate Chen's version of events surrounding his forced resignation, yet this Court refused to admit them, allowing only Chen's testimony.  *Id.*; 8/20 RP 145-47, 161-62.  That was error.

Chen resigned on December 17, 2010, during a meeting with City Manager Donna Hanson in Hanson's office.  Ex 182.  At the time, Chen's and Hanson's offices were both in trailers in a church parking lot outside City Hall, due to construction.  8/12 RP 6.  Their trailers were immediately next to one another – so close that they touched.  8/13 RP 77; 8/14 RP 181.

Chen testified that when he arrived in Hanson's office, she told him that she could fire Chen and had the Mayor's support.  8/13 RP 65.  Chen testified that Hanson then gave him an ultimatum, asking whether he wanted to quit or go on administrative leave.  *Id.*  Angry and upset, Chen grabbed a piece of paper from Hanson's printer and scrawled out a resignation letter.  *Id.*  Chen returned to his office, photocopied the resignation letter, and returned to Hanson's office with the letter and his keys and badges.  8/13 RP 71-73, 74.

In stark contrast, Hanson testified that Chen had two envelopes with him when he arrived at her office on December 17, 2010, one containing his letter of resignation.

PAGE 9- MOTION FOR NEW TRIAL

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA  98005
(425) 576-8899

8/19 RP 187.  Hanson testified that Chen voluntarily gave her his letter of resignation.

*Id*.  When she asked Chen who would be in charge of the department over the

weekend, he responded "thank you for reminding me" and then left her office.  *Id*.

Hanson expected Chen to return and was "looking for him."  *Id*.; 8/20 RP 11.

The SecureFocus emails found on the thumb drive establish a timeframe that is

consistent with Chen's version of events surrounding his forced termination:

- 3:21 PM *Office Open*
  - Chen leaves to meet Hanson
- 3:35 PM *Office Open*
  - Chen returns to office after forced resignation
- 3:37 PM *Office Open*
  - Leaves his office to photocopy the resignation letter and obtain envelopes
- 3:43 PM *Office Open*
  - Chen returns to his office, places his gun on the locker, gathers his credentials, and places a copy of his resignation in the file.
  - 3:48 – Chen sends out resignation email.
- 3:51 PM *Office Open*
  - Chen leaves office to return to Hanson's office

Supp. Motion, Dkt. No. 522, p.5.

These emails are consistent with Chen's version of events – he met with

Hanson, left her office and returned to his, later returning to Hanson's office with the

copy of his resignation letter and other items.  8/20 RP 145-47.  These emails are

inconsistent with Hanson's testimony that once Chen left her office, he never returned.

8/19 RP 187-88; 8/20 RP 11.

Although this Court allowed Chen to testify about the emails, it refused to

allow the emails into evidence.  8/20 RP 144, 145-47.  The result is that Chen, whose

veracity had already been questioned, was denied the opportunity to provide hard

PAGE 10- MOTION FOR NEW TRIAL

evidence that would corroborate his testimony regarding the most important event at issue – his forced resignation.  These emails would have bolstered Chen's credibility.

### 3.     *The non-disclosed hard drives contain additional evidence of race-based discrimination.*

The non-disclosed drives contain a November 10, 2010 email from Records Manager Linda Crum to Chen, relaying that Hanson would like Chen to call the City Hall Construction Manager to discuss an ongoing construction project that was allegedly being made difficult by a Korean Medina resident, Ms. Lee.  Gallivan decl. Ex A.  The email also states that Chen should talk to Lee, Hanson's thinking being that Chen was the best candidate to communicate effectively with Lee.  *Id.*

It was not within the scope of Chen's job duties to negotiate communications between a Medina resident and the City's Construction Manager.  Rather, the only reason for Hanson – through Crum – to ask Chen to intervene, is that Hanson believed that Chen was best suited to talk to Lee because they are both Asian.  The email is also indicative of Hanson's unwillingness to communicate with Chen directly, which happened on other occasions too.  8/11 RP 44-45; 8/12 RP 14-15.  Both are improper and indicate Hanson's disparate treatment of Chen.

But the real issue is what might still be missing.  Both the timing and nature of the City's production has made forensic examination very difficult.  Gallivan Dec. at ¶¶ 8, 14, 16.  It is impossible to tell whether one if these drives is Chen's drive, and what might still be out there.  *Id.*

PAGE 11- MOTION FOR NEW TRIAL

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA  98005
(425) 576-8899

**C.      This Court's ruling on the SPD file compounds the prejudice created by the City's misconduct.**

This Court ruled that Chen's testimony that he has never been convicted of or "charged" with a crime opened the door to cross-examination about Chen's 10-year-old departure from SPD.  8/14 RP 33-34.  The City asked whether it could "talk about the criminal charges," asserting that criminal charges "were ultimately dropped because [Chen] resigned and that was part of the plea bargain."  8/14 RP 77.  The Court denied the City's request to talk specifically about charges, and the City questioned Chen at length about the SPD investigation.  *Id*. at 78, 82-91.

 "A defendant does not 'open the door' to otherwise inadmissible evidence by doing no more than providing a truthful answer to a direct question."  ***United States v. Osazuwa***, 564 F.3d 1169, 1177 (9th Cir. 2009).  Testimony opens the door only when it is false or creates a false impression.  *Osazuwa*, 564 F.3d at 1177; ***United States v. Sine***, 493 F.3d 1021, 1037 (9th Cir. 2007).  Chen provided a truthful answer to a direct question – he has never been charged with a crime.  8/14 RP 33.  No "charges" could have been "dropped" because no charges were ever filed.  8/14 RP 77.  There was no "plea bargain."  *Id*.

This Court's erroneous ruling on this point resulted in the jury hearing lengthy testimony about a 10-year-old investigation, the sole purpose of which was to impugn Chen's character.  8/14 RP 82-91.  This highly prejudicial evidence never should have come in, and was grossly unfair to Chen.  This is an additional basis for a new trial. ***Molski***, 481 F.3d at 729.

### IV.  Conclusion

For the reasons stated above, this Court should grant Chen a new trial.

PAGE 12- MOTION FOR NEW TRIAL

JONES LAW GROUP, P.L.L.C.
11819 NE 34TH STREET
BELLEVUE, WA  98005
(425) 576-8899

1

2          DATED this 19th day of September, 2014.

3

4                                        /s/ Marianne K. Jones

5                                        _____
                                         MARIANNE K. JONES, WSBA 21034
6                                        Attorney for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    PAGE 13- MOTION FOR NEW TRIAL

1

2                        **CERTIFICATE OF SERVICE**

3

4          I hereby certify that on September 19, 2014, I caused to be served on counsel
   for Defendants via the Court's CM/ECF service, the following documents:

5
            •       Plaintiff's Motion for New Trial
6           •       Declaration of Dan Gallivan and attached Exhibit A
            •       Declaration of Jeffrey Chen
7
        SERVED PERSONS:
8

9                          Suzanne Michael
                           Matthew Macario
10                         Stephanie R. Alexander
                           Michael & Alexander, attorneys for Defendants
11
                           Email: Suzanne@michaelandalexander.com
12                                matthew@michaelandalexander.com
                                  Stephanie@michaelandalexander.com
13
        DATED this 19th day of September, 2014.
14

15

16                                        /s/ Marianne K. Jones
                                          _____
17                                        MARIANNE K. JONES

18

19

20

21

22

23

24

25  PAGE 14- MOTION FOR NEW TRIAL

                              JONES LAW GROUP, P.L.L.C.
                                 11819 NE 34TH STREET
                                 BELLEVUE, WA  98005
                                    (425) 576-8899